MENOMINEE INDIAN TRIBE
OF WISCONSIN, Plaintiff,

v.

Tommy G. THOMPSON, Governor of the State of Wisconsin; George E. Meyer, Secretary, Wisconsin Department of Natural Resources; James T. Addis, Administrator of DNR Division of Resource Management; John E. Fryatt, Administrator of DNR Division of Enforcement; Herbert F. Behnke, Trygbe A. Solberg, Neal W. Schneider, Betty Jo Nelsen, Mary Jane Nelson, James E. Tiefenthaler, Jr. and Stephen D. Willett, Members of the Wisconsin Natural Resource Board, Defendants.

No. 95–C–0030–C.

United States District Court, W.D. Wisconsin.

Feb. 26, 1996.

Bruce R. Greene Greene, Meyer & McElroy, P.C., Boulder, CO, for Menominee Indian Tribe of WI.

Charles D. Hoornstra, Asst. Atty. General, Madison, WI, for State of Wisconsin, Wisconsin Natural Resources Bd., George E. Meyer, James T. Addis, John E. Fryatt, Tommy G. Thompson, Herbert F. Behnke, Trygbe A. Solberg, Neal W. Schneider, Betty Jo Nelsen, Mary Jane Nelson, James E. Tiefenthaler, Jr., Stephen D. Willett.

Paul M. Erspamer, Jastroch & La Barge, S.C., Waukesha, WI, for Lorman Anderson, Haze Diemel, Eureka Dam Campsite, Inc., Daniel F. Groeschel, Linda Wendt, Sturgeon for Tomorrow, Inc., Walleyes for Tomorrow, Inc., Wisconsin Fed. of Great Lakes Sport Fishing.

Charles G. Curtis, Foley & Lardner, Madison, WI, for Wisconsin Paper Council, P.H. Gladfelter, Riverside Paper, Wisconsin Tissue Mills.

Kevin E. O'Neill, Milwaukee, WI, for Wisconsin Commercial Fisheries Association.

## OPINION AND ORDER NO. 1

CRABB, District Judge.

This civil action for declaratory and injunctive relief is before the court on three separate motions to intervene filed by 1) Wisconsin Paper Council; 2) Lorman Anderson; Haze Diemel; Eureka Dam Campsite, Inc., a Wisconsin corporation; Daniel F. Groeschel; Linda Wendt; Sturgeon for Tomorrow, Inc., a Wisconsin corporation; Walleyes for Tomorrow, Inc., a Wisconsin corporation; and Wisconsin Federation of Great Lakes Sport Fishing, Inc., a Wisconsin corporation; and 3) Wisconsin Commercial Fisheries Association. Also before the court are Wisconsin Paper Council's amended motion to include P.H. Gladfelter Company, Riverside Paper Corporation and Wisconsin Tissue Mills Inc. as parties to the motion to intervene and the Anderson intervenors' motion seeking to have the court amend or reconsider the order entered on August 7, 1995, granting plaintiff's motion to strike the pleadings submitted by these intervenors on July 27, 1995.

### A. *Wisconsin Paper Council*

Wisconsin Paper Council has moved for intervention as of right pursuant to Fed. R.Civ.P. 24(a) or permissively, pursuant to Fed.R.Civ.P. 24(b) and has filed an answer to plaintiff's complaint, as required by Fed. R.Civ.P. 24(c), together with a motion to dismiss. Wisconsin Paper Council alleges that it is the trade association representing the pulp, paper and allied industries that are a bulwark of the state's economy. Several of the council's members, including P.H. Gladfelter Company and Riverside Paper Corporation, have been notified by the Fish and Wildlife Service of the United States Department of the Interior that they are "potentially responsible parties" in a natural resource damage assessment the service is conducting on the lower Fox River in Wisconsin and Green Bay, Wisconsin. The assessment is being carried out under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as amended, 42 U.S.C. § 9601 *et seq.*, and other laws. CERCLA imposes liability for damages for injury to natural resources caused by the release of hazardous chemicals and provides that liability shall be to the United States, the states and Indian tribes. 42 U.S.C. § 9607(f)(1). Governing bodies of Indian tribes are to be afforded substantially the same treatment as states with respect to roles and responsibilities in effectuating the National Contingency Plan. 42 U.S.C. § 9626(a).

Plaintiff has designated two representatives to act as its "natural resource trustees" in the pending natural resource damage assessment. It asserts that it has usufructuary rights in and to the Great Lakes and basin resources that encompass most of the eastern shore of Lake Michigan, including the entire subject area of the CERCLA action. Whether plaintiff has a right to act as a trustee in the Fish and Wildlife proceedings and to recover damages from potentially responsible parties, such as Wisconsin Paper Council's members, requires an initial determination that natural resources within the area of the damage assessment belong to the tribe. 42 U.S.C. § 9607(f)(1). The same issue is at stake in this litigation, in which plaintiff seeks a judicial declaration of continued aboriginal and treaty-recognized usufructuary privileges in the lands and waters of eastern and central Wisconsin. Findings made in this case will affect the predicate of

plaintiff's claim for trustee status and recovery of damages in the damage assessment proceedings.

■ The paper council contends that its members that have been designated potentially responsible parties meet the requirements for intervention as of right. These requirements include timely application, an interest relating to the subject matter of the action, potential impairment of that interest by the disposition of the action and lack of adequate representation of the interest by the existing parties to the action. *Southmark Corp. v. Cagan,* 950 F.2d 416, 418 (7th Cir.1991). The council asserts that the interest of the potentially responsible parties is significant enough to enable them to maintain an independent action for declaratory judgment. The parties stand in a true adversarial position with respect to plaintiff and they have a legitimate protected interest in avoiding the expense and risk of having to defend against CERCLA claims asserted by plaintiff if in fact plaintiff has no right to act as a trustee or to assert damage claims.

The council believes that its members' interests cannot be represented adequately by the existing parties to this action. The state of Wisconsin does not have the same exposure to monetary liability as the potentially responsible private parties have; under CERCLA the state itself is a potential trustee in the natural resource damage assessment and could assert a damage claim of its own against the potentially responsible parties; and the possibility exists that the interests of the state and the council members will diverge as this action proceeds, although they are similar at this time. Further, they argue, the motion to intervene is timely because it was filed two months after plaintiff filed its complaint and granting the motion to intervene would not delay final resolution of the issues raised in the lawsuit.

Defendants do not oppose the motion for intervention; in fact, they have requested the court to grant the motion on the ground that the Wisconsin Paper Council's members' potential liability to plaintiff under CERCLA is an interest not shared by defendants. However, plaintiff objects vigorously to intervention, contending that the council does not have associational standing for its members; the instant lawsuit does not concern plaintiff's standing to act as a trustee in the natural resource damage assessment proceeding; no legally protectible interest of the council will be impaired or impeded in this action; and the council's interests are adequately represented by the state.

In response to plaintiff's challenge to associational standing, the council filed a motion to amend to include three potential responsible parties. This amendment moots plaintiff's first objection, which is of dubious merit in any event. *See, e.g., Conservation Law Foundation of New England, Inc. v. Mosbacher,* 966 F.2d 39, 43–45 (1st Cir.1992) (commercial fishing associations allowed to intervene in public interest group's challenge to government fishing regulations); *California ex rel. State Lands Commission v. United States,* 805 F.2d 857, 865–66 (9th Cir.1986) (Sierra Club and Natural Resources Defense Council allowed to intervene in quiet title action), *cert. denied,* 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987); *New York Public Interest Research Group, Inc. v. Regents of University of State of New York,* 516 F.2d 350, 351–52 (2d Cir.1975) (pharmaceutical association allowed to intervene in defense of challenged regulation where members' economic interests not adequately represented).

Plaintiff's second objection is based on the undisputed fact that this lawsuit will not determine the paper companies' liability for damages in the CERCLA action. The council does not argue to the contrary. It maintains only that this lawsuit is the first step in the determination of plaintiff's ability to act as trustee in the CERCLA action. If plaintiff is found to have the right to hunt, fish and gather on any of the land or waters affected by the CERCLA action, plaintiff will have a strong position from which to argue that it should be a trustee. Conversely, a finding that plaintiff does not have any such rights off its reservation may well bar it from acting as a trustee in the proceedings. As potentially liable parties, the proposed intervenors have a strong interest in narrowing the number of parties to whom they may be liable and the number against whom they will have to defend in administrative proceedings

and court suits. Furthermore, they have an interest in limiting the scope and extent of potential liability. Although plaintiff argues that the liability will be the same regardless who the injured parties are found to be, it notes in its brief in opposition to the council's motion that the claimed loss of use of natural resources may be different depending on which trustee is seeking recovery. Pl.'s Brief, dkt. # 26, at 12.

The council and the individual paper companies have a legally protectible interest in this lawsuit based on their stake in disproving plaintiff's claim to usufructuary interests in the area covered by the CERCLA proceeding. I cannot say that the disposition of the suit will not impair or impede their ability to protect that interest. However, I believe that the proposed intervenors have failed to show that their interest in this suit is not adequately represented by the state of Wisconsin.

The state has advised the court that the council has an interest in the litigation that is not shared by the state defendants because of its members' potential liability to plaintiff in the pending CERCLA litigation, but it has not explained how this liability affects the matters to be decided in the instant litigation. At least at this stage of the litigation, the council's interest and the state's are aligned perfectly. Both contest the tribe's assertion of its treaty-recognized or aboriginal right to hunt, fish and gather outside the boundaries of its reservation, free from state regulation.

■■■■ As plaintiff has pointed out, there is a presumption of adequate representation when, as in this case, the party representative is a governmental body or officer charged by law with representing the interests of the would be intervenors. *See, e.g., American National Bank & Trust v. City of Chicago,* 865 F.2d 144, 147 (7th Cir.1989) (plumbers' union denied leave to intervene in suit challenging constitutionality of regulations prohibiting use of polyvinyl chloride plumbing materials because union failed to show that city would not represent its interests adequately); *Keith v. Daley,* 764 F.2d 1265, 1270 (7th Cir.1985) (anti-abortion group denied leave to intervene in suit challenging

constitutionality of Illinois statute regulating abortion because state was defending challenge adequately); *United States v. South Bend Community School Corp.,* 692 F.2d 623, 627 (7th Cir.1982) (neither parents' nonprofit corporation nor NAACP had right to intervene in school desegregation case when they had not shown inadequacy of representation by government, which shared ultimate objective of proposed intervenors); *Pennsylvania v. Rizzo,* 530 F.2d 501, 505 (3d Cir.) (Fire Officers Union not allowed to intervene in absence of showing that city did not represent union's interests adequately), *cert. denied sub nom. Fire Officers Union v. Pennsylvania,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). *See also New Jersey v. New York,* 345 U.S. 369, 372–73, 73 S.Ct. 689, 690–91, 97 L.Ed. 1081 (1953) (principle that state is deemed to represent all its citizens when a party to suit involving a matter of sovereign interest is "necessary recognition of sovereign dignity, as well as a working rule for good judicial administration"). In *New Jersey,* the Court held that in cases involving sovereign interests, proposed intervenors would be denied leave to intervene unless they could demonstrate some *compelling interest* in their own right that is not properly represented by the state. This high standard has been rejected by the Court of Appeals for the District of Columbia as too strict for cases not coming within the original jurisdiction of the Supreme Court. *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738, 739 (D.C.Cir.1979). The court held, however, that in cases filed in federal district court, a proposed intervenor must overcome the presumption of adequate representation by showing "that its interest is in fact different from that of the state and that that interest will not be represented by the state." *Id.* at 740. Such a showing may be made when, for example, the government representative indicates a disinclination to represent the particularized interests of a proposed intervenor, *see, e.g., Conservation Law Foundation,* 966 F.2d at 44 ("Secretary's silence on any intent to defend the fishing groups' special interests is deafening"), or state's interest and that of proposed intervenor do not align exactly, *see, e.g., In re Sierra Club,* 945 F.2d 776, 780 (4th Cir.1991)

(environmental group allowed to intervene in suit challenging constitutionality of state regulation of hazardous waste because group was opposed to issuance of permits and state is presumed to represent interests of all citizens, including those who might support new hazardous waste facilities), or where the government's settlement of a suit would frustrate the mandate of the Supreme Court, *see, e.g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 136, 87 S.Ct. 932, 937, 17 L.Ed.2d 814 (1967).

■ At this stage of the litigation, when the only issue is the determination of the existence of plaintiff's usufructuary rights, I conclude that these proposed intervenors, Wisconsin Paper Council, P.H. Gladfelter Company, Riverside Paper Corporation and Wisconsin Tissue Mills Inc., have not shown that they are entitled to intervene in this action as of right. Even if their interests might diverge at a later point, as of now they are identical. The applicants for intervention are seeking exactly what the state is seeking: a judicial determination that plaintiff has no continuing usufructuary rights outside its reservation. The record establishes that the state defendants are pursuing that goal vigorously and effectively. If the litigation proceeds beyond the determination of the existence of the tribe's usufructuary rights and if at such time these proposed intervenors believe that their interests have diverged from those of the state and that they can overcome the presumption of the adequacy of the state's representation of their interests, they will be free to renew their motion.

■ The Court of Appeals for the Seventh Circuit has recognized that questions concerning permissive intervention may change as a case progresses. *See, e.g., United States v. Board of School Commissioners of Indianapolis, Inc.,* 466 F.2d 573, 576 (7th Cir.1972) (changes in scope of litigation occurring after denial of intervention are relevant to determining whether permissive intervention should be granted at new phase of litigation). It is equally logical to reexamine the question of intervention as of right when lengthy and complex litigation reaches a new phase.

The applicants for intervention have cited *Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994 (8th Cir.1993), in support of their motions for intervention. In *Mille Lacs Band,* the court of appeals overturned the district court's refusal to allow intervention as of right to landowners and counties in the area affected by the plaintiff tribe's assertion of treaty-reserved usufructuary rights. The appellate court based its ruling on its belief that the landowners and counties had interests different from the state's and could not rely on the state to represent those interests vigorously. The landowners feared for the depreciation of their property values if the band gained rights to hunt, fish and gather on the landowners' private lands or if their hunting and fishing depleted the stocks of wildlife. The counties had the same interest in the value of their public lands from which they derived revenue. According to the court, the state had an interest in natural resources greater than its interest in the market value of its land holdings, about which it may care little. With respect, I find this analysis unconvincing. First, it is based on assumptions about risk to land values and natural resources that are wholly speculative. Second, it depends on an artificial view of the state's interest in the litigation. Perhaps in Minnesota the state's overriding concern in a treaty rights case is natural resources and specifically, the protection of endangered species and the preservation of existing levels of wildlife stocks, but I could not make the same characterization of the state of Wisconsin's work in the present litigation—or of its litigation strategy in the *Lac Courte Oreilles* litigation. *See United States v. Bouchard,* 464 F.Supp. 1316 (W.D.Wis.1978), and subsequent decisions. Rather, the state has pursued the matter of natural resources within the larger context of protecting the interests of its citizens. To the extent that landowners might argue in this case as they did in the *Mille Lacs Band* case that any prospect of depletion of natural resources stocks would reduce the market value of their real estate, the state of Wisconsin's concern for those natural resources and its vigorous defense of them would only inure to the benefit of property owners within the ceded territory.

I turn next to the question whether the council and the individual companies should be granted leave to intervene permissively. Permissive intervention rests on a showing that the claim or defense asserted by the proposed intervenor has a question of law or fact in common with the action in which intervention is sought. The grant or denial of permissive intervention is within the discretion of the court, which is to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). When intervention of right is denied for the proposed intervenor's failure to overcome the presumption of adequate representation by the government, the case for permissive intervention disappears. I am convinced that the state is zealously and effectively representing the interests of the proposed intervenors as well as the other citizens of the state. I am not persuaded that allowing the council and the individual companies to intervene would promote the prompt determination of the question of the continued existence of plaintiff's usufructuary rights. This decision will not affect the proposed intervenors adversely. Their views will be taken into consideration in deciding the pending motion to dismiss the suit filed by the state defendants because I intend to rely on their briefs as the briefs of amici curiae.

### B. *Lorman Anderson, Haze Diemel, et al.*

When these proposed intervenors moved to intervene, they failed to submit a brief in support of the motion and they did not file a pleading setting forth the claim or defense for which intervention is sought, as required by Fed.R.Civ.P. 24(c). Despite these failures, a briefing schedule was set on their motion to intervene, giving them until May 19, 1995 in which to submit a brief in support of their motion. No such brief was filed. On July 27, 1995, however, the proposed intervenors filed an amended motion to intervene, together with a brief in support. Plaintiff moved to strike the motion and brief as untimely. The motion was granted. Now the proposed intervenors ask to have the order striking their untimely materials amended or vacated and their amended motion considered on its merits.

In support of the motion to reconsider, counsel for the proposed intervenors says only that the brief filed by plaintiff was lengthy and that he had to consult with the multiple proposed intervenors about the position they wished to take. He does not explain why these proposed intervenors did not seek a modification of the briefing schedule as they were advised they could do by writing to the clerk's office.

I am not persuaded that the proposed intervenors have made a case for vacation of the order striking their materials as untimely. Their motion will be denied, as will their original motion to intervene, because it does not meet the requirements of Rule 24(c). Denial of these motions is without prejudice to their filing a new motion for intervention at a later phase of this proceeding if it should be determined that plaintiff does have continuing usufructuary rights outside its reservation.

### C. *Wisconsin Commercial Fisheries Association*

Wisconsin Commercial Fisheries Association, which I will refer to as Fisheries, has moved for intervention as of right pursuant to Rule 24(a), contending that its members' economic interests are at risk if plaintiff succeeds in showing that it has continuing usufructuary rights in and to the waters on which Fisheries' members make their living. It asserts as well that a property right is at stake in the form of its members' commercial fishing licenses. I will assume without deciding that Fisheries has an economic stake in the final outcome of this case and that its interests may be impaired or impeded by its final disposition. However, for the same reasons outlined above in the discussion of the Wisconsin Paper Council's motion to intervene, I conclude that Fisheries has not shown that the state is not representing its interests adequately at this time.

Fisheries tries to distinguish its interests and those of the state by saying that the state disputes its members' view that their commercial fishing licenses represent property subject to constitutional protections. This effort fails, both because that issue has been

resolved by a state court and is not subject to relitigation in this suit and because Fisheries has failed to show how the so-called dispute affects the adequacy of the state's representation. Just as the other proposed intervenors will be free to renew their motions for intervention if plaintiff is found to have continuing usufructuary rights, Fisheries may file such a motion if it determines that it can overcome the presumption of the adequacy of the state's representation of the rights of all its citizens.

### ORDER

IT IS ORDERED that the motion for intervention as of right and permissively of Wisconsin Paper Council, P.H. Gladfelter Company, Riverside Paper Corporation and Wisconsin Tissue Mills Inc. is DENIED. The motion to vacate the August 8, 1995 order striking as untimely the brief and answer of proposed intervenors Lorman Anderson; Haze Diemel; Eureka Dam Campsite, Inc., a Wisconsin corporation; Daniel F. Groeschel; Linda Wendt; Sturgeon for Tomorrow, Inc., a Wisconsin corporation; Walleyes for Tomorrow, Inc., a Wisconsin corporation; and Wisconsin Federation of Great Lakes Sport Fishing, Inc., a Wisconsin corporation is DENIED, as is their original motion to intervene as of right or permissively. The motion of Wisconsin Commercial Fisheries Association to intervene as of right or permissively is DENIED.