The **GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.,**
Plaintiff,

v.

The **TOWN OF EAST HAMPTON and the Town Board of East Hampton, Defendants.**

**No. CV 96–5610.**

United States District Court,
E.D. New York.

March 5, 1998.

Esseks, Hefter & Angel by John M. Wagner, Riverhead, NY, for Plaintiff.

Cahn Wishod & Lamb, L.L.P., Richard C. Cahn, Melville, NY, for Defendants.

Arnold & Porter by Monica Jahan Bose, New York City, for Proposed Intervenor–Defendant Group for the South Fork, Inc.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this action challenging the validity of a local zoning law, Group for the South Fork, Inc. (the "Group") requests leave to intervene as defendants either as of right under Fed.R.Civ.P. 24(a)(2), or alternatively, as a matter of discretion under Fed.R.Civ.P. 24(b)(2). For the reasons set forth below, the Group's motion is denied with leave to renew at a later stage of the litigation.

### FACTS

In 1996, defendant Town of East Hampton[1] adopted and filed with the State of New York a local zoning law, officially known as Local Law No. 17 of 1996 (the "Superstore Law"), amending Chapter 153 of the East Hampton Town Code to restrict the establishment of very large retail stores within East Hampton outside of the Central Business zone. The Superstore Law provides, *inter alia,* that a building used for a super-market may not exceed 25,000 square feet in gross floor area and that parking for supermarkets shall be located primarily to the sides or rear of the building.[2] The effect of the Superstore Law was to prevent plaintiff, The Great Atlantic & Pacific Tea Company, Inc. ("A & P"), from proceeding with its proposal to develop a 33,878 square foot[3] supermarket at a site on Montauk Highway formerly occupied by a Stern's department store. The proposed site is in a Neighborhood Business zone.

A & P brings this suit against the Town, seeking a declaratory judgment that the Town's passage of the Superstore Law was beyond its legislative authority, and that the law itself violates the New York and federal constitutions in that it denies A & P due process and equal protection, and interferes with interstate commerce. A & P also asserts that the law violates 42 U.S.C. § 1983 and is an illegal restraint of trade under New York law. The Town has moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Through its president, Robert DeLuca, the Group describes itself as an environmental organization dedicated to preserving the rural character, rural heritage, and natural resources of the South Fork of Long Island, including the East Hampton area. DeLuca Aff. at ¶¶ 2, 5. The Group actively supported the Superstore Law, and its members provided extensive testimony during public hearings as well as providing commentary on area planning statements relevant to the law. DeLuca Aff. at ¶¶ 6, 10, 16. The Group has also submitted affidavits from some of its members who live near the proposed site of the A & P supermarket, averring that the rural and residential character of the area will be changed to the detriment of their property values.

---

1. Both the Town of East Hampton and the Town Board of East Hampton are named as defendants. In this opinion, they are referred to collectively as "the Town."

2. A "supermarket" is defined in the statute as a food or beverage store within a building with a floor area of 10,000 square feet or more.

3. The parties differ in their description of the size of the proposed supermarket. The Town asserts that A & P seeks to build a 48,878 square feet supermarket while A & P maintains that it has proposed a 33,878 square feet supermarket that has a 15,000 square foot cellar used for storage and utility. Because the size of the store, under either description, is barred by the Superstore Law, the discrepancy is not important for purposes of this motion.

The Group has filed a proposed answer and proposed memoranda of law in support of its proposed motion to dismiss A & P's complaint. A review of the memoranda of law submitted by the Town and the Group reveals that they raise similar arguments in support of dismissal of plaintiff's complaint. A & P objects to the Group's intervention in this action.

## ANALYSIS

### I. *Intervention as of Right*

■ To intervene as of right under Rule 24(a)(2), the would-be intervenor must establish the following:

(1) a timely motion; (2) an interest relating to the property or transaction that is the subject matter of the action; (3) an impairment of that interest without intervention; and (4) the movant's interest is not adequately represented by the other parties to the litigation.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994) (citing *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir.1987)). Intervention will be denied if any requirement is not met. *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir.1990).

### A. *Timeliness*

■ The complaint was filed on November 20, 1996, and the Group's motion to intervene was filed on May 9, 1997. A & P does not contest the timeliness of the motion and the Court finds, absent opposition, that the first element of the *Pitney Bowes* test is met.

### B. *The Intervenor's Interest in the Transaction that is the Subject of the Action*

■ An intervenor's interest must be "direct, substantial, and legally protectable," *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir.1992), rather than "remote or contingent." *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 88 (2d Cir.1986). An organization like the Group has a sufficient interest to support intervention by right where the underlying action concerns legislation previously supported by the organization. This is particularly true where, as here, the personal interests of its members in the continued environmental quality of the area and the continued rural character of East Hampton would be threatened if the Superstore Law is found to be invalid or unconstitutional and A & P proceeds with development of its planned market. *See Herdman v. Town of Angelica*, 163 F.R.D. 180, 186–87 (W.D.N.Y.1995). The Court finds that the Group has demonstrated a sufficient legal interest in the subject matter of this action to satisfy the second element of the *Pitney Bowes* test.

### C. *Effect on Intervenor's Interests*

■ The third element of the intervention by right standard is met where the intervenors demonstrate that, absent intervention, the disposition of the action may, as a practical matter, impede or impair their interests. *Pitney Bowes*, 25 F.3d at 70. Here, the interests of the Group and its members would likely be impaired if the Superstore Law is found to be invalid or unconstitutional.

### D. *Adequacy of Representation*

■ Although the Group's application to intervene passes the first three steps, it founders on the final element, adequacy of representation. An applicant for intervention as of right must show that it may not be adequately represented by a named party. This showing places only a "minimal burden" on the would-be intervenor. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978). Nonetheless, adequate representation is presumed when the would-be intervenor shares the same ultimate objective as a party to the lawsuit. *Brennan*, 579 F.2d at 191 (citing *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir.1976)); accord *Washington Elec. Coop.*, 922 F.2d at 98. To overcome the presumption of adequate representation in the face of shared objectives, the would-be intervenor must demonstrate collusion, nonfeasance, adversity of in-

terest, or incompetence on the part of the named party that shares the same interest. *See Mrs. W. v. Tirozzi,* 124 F.R.D. 42, 44 (D.Conn.1989); *Oneida Indian Nation of Wisconsin v. State of New York,* 102 F.R.D. 445, 448 (N.D.N.Y.1983), *rev'd on other grounds,* 732 F.2d 261 (2d Cir.1984); *Spirt v. Teachers Ins. & Annuity Ass'n,* 93 F.R.D. 627, 644 (S.D.N.Y.1982), *aff'd in part and rev'd in part on other grounds,* 691 F.2d 1054 (2d Cir.1982); *British Airways Bd. v. Port Auth. of N.Y. & N.J.,* 71 F.R.D. 583, 585 (S.D.N.Y.1976), *aff'd,* 556 F.2d 554 (2d Cir. 1976); *United States v. International Business Machines,* 62 F.R.D. 530, 538 (S.D.N.Y. 1974); *accord Edwards v. City of Houston,* 78 F.3d 983, 1005 (5th Cir.1996); *United States v. Alcan Aluminum, Inc.,* 25 F.3d 1174, 1185 (3d Cir.1994); *Purnell v. City of Akron,* 925 F.2d 941, 949 (6th Cir.1991); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir.1979); *Commonwealth of Va. v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir.1976).[4]

██ On the facts here, adequate representation is presumed because the Group and the Town share the same ultimate objective in this litigation, namely, a declaration that the Superstore Law was validly enacted and is constitutional. The Group does not suggest that the presumption is overcome because of collusion, nonfeasance, or incompetence by the Town in its defense of the validity of the Superstore Law. Rather, the Group contends that the Town will not adequately represent its interests in defending the Superstore Law because the Group is an environmental organization whose concern is focused on protecting the environment and the rural character of the South Fork of Long Island, whereas the Town must concern itself with other interests such as perceived economic growth and stimulation of tax revenues. Intervenor's Mem. at 13–14. Consequently, the Group contends, it will argue the environmental rationale for the Superstore Law more vigorously than would the Town.

Even accepting as true the Group's characterization of these differing concerns, the interests of the Group coincide with the interests of the Town in terms of the single legal issue to be determined by this lawsuit, i.e., the validity and constitutionality of the Superstore Law. To prevail on its theory of inadequate representation, the Group would need to demonstrate that it has a legal interest in maintaining the Superstore Law that not only differs from the Town's interest, but would permit the Group to assert a justification for the law that could not be equally asserted by the Town. This demonstration is lacking. *See Natural Resources Defense Council v. New York State Dep't of Environ. Conservation,* 834 F.2d 60, 62 (2d Cir.1987) (finding adequate representation where proposed intervenor failed to show that the nature of its interests were related to colorable legal defenses that the state agency would be less able to assert). The fact that the Group and the Town may have different motives behind their joint interest in defending the statute does not lead to the conclusion that the Town will fail to pursue its defense of the Superstore Law with vigor. *Washington Elec. Coop.,* 922 F.2d at 98 ("a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from a party to the action," citing *Natural Resources Defense Council,* 834 F.2d at 61–62).

To the extent that the Group, by virtue of its environmental expertise, might be more persuasive than the Town in arguing the environmental justification for the Superstore Law, such a notion is speculative (particularly in light of the cooperation between the Group and the Town in passing the Superstore Law) and unsupported by examination of the Group's proposed briefs submitted in support of the Town's motion to dismiss. Both sets of briefs raise the same issues and offer the same arguments. Even assuming that the Group may be better able than the Town to provide environmental expertise and

---

**4.** Some courts have held that the adequacy of representation is determined by reference to the issues of collusion, nonfeasance, and incompetence, without restricting the formula to the instance where the intervenor shares its objective with a named party. *See Miller v. Silbermann,* 832 F.Supp. 663, 672 (S.D.N.Y.1993); *Kamerman v. Steinberg,* 681 F.Supp. 206, 211 (S.D.N.Y. 1988).

that a need for such expertise will arise during these proceedings, the Group may seek amicus curiae status to bring its views before the Court.

The Group further contends that it is inadequately represented because the Town might settle the action on terms that the Group would not approve, or because the Town might not appeal an adverse decision. These arguments are unpersuasive. As the Fifth Circuit has noted with respect to possible future settlement of an action:

> The mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation. If this were so, the requirement that the would-be intervenor show inadequacy of representation would be effectively written out of the rule, for it is always a possibility that the present parties will settle a lawsuit.

*Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984); *see Weller v. Actors' Equity Ass'n*, 93 F.R.D. 329, 330 (S.D.N.Y.1981) (mere conclusory allegation that present party may enter into a settlement is insufficient to show inadequate representation). Similarly, the mere fact that a party might fail to appeal does not rise to the level of inadequate representation. "If disagreement with an actual party over trial strategy, including whether to challenge or appeal a court order, were sufficient bases for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless." *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir .1990).

Because the Group has failed to demonstrate that the Town will inadequately represent its interests, the application for intervention as of right pursuant to Rule 24(a)(2) is denied with leave to renew at a later stage of the proceedings in the event the Group can make a factual showing that the Town is not vigorously litigating the case.

## II. *Permissive Intervention*

The Group also seeks to intervene pursuant to Rule 24(b)(2). Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). This threshold test is clearly met because both the Group and the Town seek a declaration that the Superstore Law is valid and constitutional.

Permissive intervention is a matter left to the discretion of the court. *Brennan*, 579 F.2d at 191. The principal consideration for the court in determining whether or not to allow intervention is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 191. In exercising its discretion, the court may consider other relevant factors, including the nature and extent of the intervenor's interests; whether the intervenor's interests are adequately represented by the parties; and whether the party seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal question presented. *Id.* at 191–92; *accord H.L. Hayden Co.*, 797 F.2d at 89.

It is also clear, however, that intervention should not be used as a means to inject collateral issues into an existing action, particularly where it serves to delay and complicate the litigation. *Washington Elec. Coop.*, 922 F.2d at 97, 98. After reviewing the affidavits submitted by the Group in support of its motion to intervene, the Court is troubled by the potential for the injection of collateral issues, in particular, the issue of commercial development at the proposed A & P site even where such development would be within the limits imposed by the Superstore Law.

The affidavit submitted by the Group's president, Robert DeLuca, stresses concerns that go far beyond merely validating the Superstore Law and strongly suggests that any major commercial development which changes the present character of the proposed A & P site would be unacceptable to the Group, even if such development fell within the bounds of the Superstore Law. DeLuca states that the site at which plaintiff proposes to build its supermarket was formerly occupied by a Stern's department store. He adds that "[t]he commercial use of the site by Stern's was not apparent from the

road [Montauk Highway] and did not adversely impact on the community" because Stern's retained open space, trees, and vegetation on the site, as well as certain older structures, which he describes as "a historic riding academy." DeLuca Aff. at ¶ 13. He points out that:

> the Group and its members are ... concerned with the numerous *site-specific impacts* of the A & P superstore proposal. The A & P proposal would result in demolishing historic buildings and destroying old field plants, large trees, and open space currently on the site. A & P's proposal, a box-like massive supermarket with parking lot in front, is completely incompatible with the rural and residential character of the area. Further, the A & P proposal would result in greatly increased traffic in the area

*Id.* at ¶ 18 (emphasis added).

The affidavits submitted by other Group members similarly indicate that their concerns are not so much directed to banning superstores in East Hampton areas zoned for Neighborhood Business as they are to banning any major commercial development of the proposed A & P site. For example, Edward Bleier, who lives 900 feet from the site, avers that:

> I have no objection to the development of supermarkets in central business districts, but do not believe they belong in residential areas. At present, the A & P has a supermarket in the shopping district of East Hampton Village, which is approximately 1.5 miles from the proposed A & P.... I shop at the Village A & P and believe that the store should be improved and expanded if needed.

Bleier Aff. at ¶¶ 2, 9.

Gerson Antell avers that building an A & P at the proposed site will worsen traffic conditions and cause increased traffic near his home, about a quarter-mile away. Antell Aff. at ¶ 3. Adelaide deMenil and Edmund Carpenter state that a nature sanctuary lies about 70 yards from the site and that "a supermarket with light, noise, fumes, activity ... will force the sanctuary to be abandoned." deMenil and Carpenter Aff. at ¶¶ 3–4. Barbara Johnson lives about 25 yards

from the site and states that "people who come to East Hampton for the summer do not want to be next to a large, noisy, smelly supermarket." Johnson Aff. at ¶ 4. Marvin and Virginia Kuhn say that they live contiguous to the eastern boundary of the site and complain that even when the site was occupied by Stern's, they were disturbed by the lights at night. They add that a supermarket would bring noise and vermin. Kuhn Aff. at ¶¶ 4–6. Affidavits of the other Group members are to the same effect.

After reviewing the affidavits submitted by the Group, the Court is left with the firm impression that the Group will seek to transform this lawsuit from a test of the validity of the Superstore Law into a contest over the propriety of commercial development in East Hampton in general and at the proposed A & P site in particular. The arguments raised in the Group's affidavits are equally applicable to the proposed A & P supermarket and to the establishment of smaller ventures on the site.

Taking the above considerations into account, the Court finds that the nature and extent of the Group's interest in defending the validity of the Superstore Law is identical to that of the Town and both seek the same ultimate outcome. The Town appears ready, willing and able to vigorously defend the validity of the Superstore Law so that the Group's interests are adequately represented. Moreover, the Group's concerns over commercial development at the proposed site, as opposed merely to its concern to defend the validity of the Superstore Law, injects a collateral issue into this lawsuit that can only serve to delay and complicate the proceedings to the prejudice of plaintiff without assisting in the resolution of the central issue before the Court. Such delay is in addition to the unnecessary delay that ensues when a would-be intervenor, as here, "merely underlines issues already raised by the primary parties. Additional parties always take additional time." *British Airways Board,* 71 F.R.D. at 585 (internal quotation omitted). Consequently, the Group's motion to intervene pursuant to Rule 24(b)(2) is denied with leave to renew at a later stage of the proceedings in the event the Group can make a

factual showing that the Town is not vigorously litigating this action.

### CONCLUSION

For the reasons stated above, the Group's motion to intervene is denied with leave to renew at a later stage of the proceedings in the event the Group can make a factual showing that the Town is not vigorously litigating this action.

SO ORDERED.