**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**FIRST CAPITAL CONSUMER MEM- BERSHIP SERVICES, INC.;** World- wide Telcom, Inc.; Louis Giambrone, Individually and as an officer of First Capital Consumer Membership Services, Inc., and Worldwide Telcom, Inc.; Charles A. Barone, Individually and as an officer of First Capital Consumer Membership Services, Inc.; Forum Mar- keting Services, Inc.; Edward Velas- quez, Jr., Individually and as an officer of Forum Marketing Services, Inc.; Wil- liam John Velasquez, Individually and as an officer of Forum Marketing Ser- vices, Inc., and QualyCon of New York, Inc.; QualyCon of New York, Inc.; De- fendants,

**and**

**Electronic Payment Exchange,**
**Proposed Intervenor.**

No. 00–CV–905C(F).

United States District Court,
W.D. New York.

Oct. 15, 2001.

Federal Trade Commission (Peter W. Lamberton, of Counsel), Washington, D.C., for Plaintiff.

Ricotta & Personius (Rodney O. Personius, of Counsel), Buffalo, New York, for Defendants.

Jaeckle, Fleischmann & Mugel, LLP (Charles C. Swanekamp, of Counsel), Buffalo, New York, for Proposed Intervenor.

Hodgson Russ LLP (Garry M. Graber, and Julia S. Kreher, of Counsel), Buffalo, New York, for Receiver.

CURTIN, District Judge.

## INTRODUCTION

Non-party Electronic Payment Exchange ("EPX") has moved to intervene in this action by right and by permission under Fed. R.Civ.P. 24(a) and (b). Item 61. EPX seeks to intervene as a plaintiff to obtain judgment against the First Capital defendants[1] in the amount of $660,121.39, together with interest, costs, and other fees, and to obtain an order from this court directing the Permanent Receiver, Garry M. Graber, Esq., to remit to

---

1. The First Capital defendants are: First Capital Consumer Membership Services, Inc., Worldwide Telecom, Inc., Charles A. Barone, Sr., and Louis Giambrone.

EPX funds held by the First Capital defendants in the Bank of America under an account entitled "Dakota Financial Group" (the "Dakota account"). Item 61, Ex. M., pp. 5–6. Both the plaintiff Federal Trade Commission ("FTC") and the Permanent Receiver have opposed EPX's motion to intervene. Items 71 and 73. Oral argument was held on August 13, 2001. For the reasons that follow, EPX's motion to intervene is denied.

## BACKGROUND

On October 23, 2000, the FTC filed a complaint for injunctive and other equitable relief against the First Capital defendants. Item 1. This complaint asserted one violation of section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and two violations of the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. These counts were based on allegations that defendants employed deceptive practices in selling various credit card protection services to the public by telemarketing.

On the same day that FTC filed its complaint, the court granted FTC's *ex parte* application for a Temporary Restraining Order with Asset Freeze and Order Appointing a Temporary Receiver. Item 10. Garry M. Graber, Esq., was appointed temporary Receiver of corporate defendants First Capital Consumer Membership Services, Inc. ("First Capital"), and Worldwide Telecom, Inc. ("Worldwide"). *Id.* On October 26, 2000, the court issued an Amended Temporary Restraining Order, extending the asset freeze contained in the original order to other persons and entities, including the Forum defendants.[2] Item 13.

On November 9, 2000, the court entered a Stipulated Preliminary Injunction against the First Capital defendants which continued the asset freeze over accounts held by the First Capital defendants, and one account held by the Forum defendants. It also appointed Mr. Graber as Permanent Receiver to retain control over defendants First Capital and Worldwide. Item 24. On November 16,

2000, Forum filed an emergency motion to lift the asset freeze against Forum's frozen account. Items 25–27. The asset freeze against that Forum account currently remains in place. On November 27, 2000, the First Capital defendants answered the FTC's complaint. Item 28.

On October 26, 2000, the FTC filed a complaint under docket number 00–CV–917 for injunctive and other equitable relief against the Forum defendants, asserting a violation of section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and a count alleging that the defendants employed deceptive practices to sell credit card protection services to the public via telemarketing. Item 1.[3] This case, originally assigned to Judge Skretny, was transferred to this court. Item 13. The FTC then moved to consolidate the First Capital and Forum actions. Item 50. The court ordered consolidation under Docket Number 00–CV–905. Item 53.

On May 23, 2001, the Receiver moved for approval of its First Interim Report and Account of Receivership, Item 54, and for approval of fees and disbursements. Item 55. On June 29, 2001, the court approved the Receiver's First Interim Report, Item 69, and approved the Receiver's fees. Item 70. On May 31, 2001, the FTC filed its First Amended Complaint against the First Capital defendants, the Forum defendants, and QualyCon of New York, Inc. Item 58. The First Amended Complaint included all counts from the original First Capital and Forum complaints, plus two additional counts.

The FTC and the First Capital defendants have pursued settlement discussions and have reported to the court that only minor details of a settlement remain to be negotiated.

On June 7, 2001, EPX filed its motion to intervene. Items 61, 62.

## FACTS

EPX is a "credit card processor which receives credit card transactions from a mer-

---

**2.** The Forum defendants include: Forum Marketing Services, Inc., Worldwide Telcom, Inc., Edward Velasquez, Jr., and William John Velasquez.

**3.** This is an item number under Docket Number 00–CV–917.

chant and transmits the transactions through the banking and VISA system for authentication and settlement." Item 62, p. 2. In this capacity, EPX was a party to a contract with defendant Worldwide Telcom, Inc. (the merchant), entered into on April 19, 1999, by which EPX provided credit card transaction processing for Worldwide.

Among its services as a financial intermediary, EPX facilitates charge-back transactions. If consumers contact their credit card company (the "issuer") and challenge a transaction appearing on their monthly credit statement, the issuer may initiate a charge back. "A charge back is essentially a refund to the consumer whereby the item is taken off a consumer's credit card statement and the merchant is responsible to reimburse the funds to the issuer who has already provided a refund to the consumer." Affidavit of Steven Barczykowski, EPX Chief Financial Officer, attached to EPX's Notice of Motion, Item 61, ¶ 4. EPX then "facilitates the charge back transaction by first funding the issuer for the consumer refunds and then, second, collecting those funds back from the merchant." *Id.*, ¶ 5.

In November 1999, EPX terminated the agreement with Worldwide by written notice. Nevertheless, it continued to receive charge-backs for many months thereafter. As a result, EPX funded "large amounts of consumer charge backs that it was not able to collect initially from Worldwide." *Id.*, ¶ 6; Item 61, Ex. A. On August 4, 2000, EPX entered into an agreement with Worldwide, Giambrone, and Barone "to resolve the payment and collection of outstanding monies owed by Worldwide to EPX" pursuant to their April 19, 1999 agreement. *Id.*, ¶ 7. The parties agreed that the amount due EPX, as of July 13, 2000, was $660,121.39. *Id.* Through this agreement, "Worldwide and the individual parties agreed to execute, deliver and issue to EPX, a Promissory Note payable to the order of EPX in the amount of $405,600, to be paid in the manner set forth in the Note." *Id.*, ¶ 8. The Note is attached to Item 61 as Ex. C.

Pursuant to this Note, asserts Mr. Barczykowski,

Worldwide had set aside funds in the Bank of America account entitled 'Dakota Financial Group' totaling approximately $240,000 for restitution of certain EPX's advances for consumer charge backs. In correspondence dated October 9, 2000, a copy of which is annexed hereto as Exhibit D, Barone and Giambrone confirmed a conversation of October 2, 2000 with our office that Dakota Financial Group would be remitting approximately $240,000 to EPX relative to their payment obligations resulting from charge backs per the Agreement.

*Id.*, ¶ 9.

Later that month, the funds in the Dakota account were seized by the FTC and placed under Receivership. EPX directed correspondence to Barone and Giambrone on November 28, 2000, serving them with notice of default under the Note. Barczykowski Aff. ¶ 11; Item 61, Ex. E. On the same day, EPX also informed the Receiver of the default and advised him of its claim against the personal and business assets seized and/or frozen by the FTC regarding the First Capital defendants. *Id.*, ¶ 11, Ex. F. In a letter to the Receiver dated December 6, 2000, EPX requested that the funds in the Dakota account be released to EPX as reimbursement for previously issued consumer refunds. *Id.*, ¶ 13, Ex. H. In a letter dated December 15, 2000 to the FTC, EPX recounted its efforts to gain release of the funds in the Dakota account, observing that "EPX has effectively replaced the consumers as the damaged innocent party to any fraud or misrepresentations that may have been made by Worldwide Telcom." EPX requested that it "be placed as a creditor and damaged party on par with consumers," and again requested release of the funds in the Dakota account. *Id.*, ¶ 14; Ex. I.

On March 4, 2001, EPX again wrote Mr. Graber, setting forth the history of its efforts to gain reimbursement, noting that it was filing a claim with the Receiver under the August 4, 2000 Promissory Note in the amount of $526,165.83 (prior to the calculation of interest), and asserting that the Receiver had not acted in good faith in not addressing the release of the funds in the

Dakota account. *Id.,* ¶ 15; Ex. K. The Receiver responded by letter dated March 14, 2001, noting that it was not in a position to evaluate the merits of EPX's claim, or any other claim, since the court had not yet established a procedure for processing and paying claims which would have to be approved by the court. The Receiver's letter stated, "I can only assure you that EPX's claim will be fairly evaluated and paid, if appropriate, in whole or in part, consistent with applicable law and any orders of the Court." Item 61, Ex. L. Enclosing a copy of the Stipulated Preliminary Injunction, the letter pointed out that the Injunction provided for a "Stay of Other Actions" whereby a party seeking to establish or enforce a claim against the Receivership defendants was prohibited from commencing or prosecuting a lawsuit in derogation of the court's order unless leave of court was obtained. The Receiver advised that any collection action contemplated by EPX would be "done at its own peril." *Id.*

Unsuccessful in causing funds in the Dakota account, or any other funds, to be released to it, EPX moved to intervene in this action.

### *ARGUMENT*

## I. Standard for Intervention

EPX moves for intervention as a plaintiff as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2) or, in the alternative, for intervention as a plaintiff by permission, pursuant to Fed. R.Civ.P. 24(b)(2). Its motion to intervene only reaches the First Capital defendants.

### A. Intervention as of Right

The standards governing intervention as of right under Fed.R.Civ.P. 24(a)(2) are well established. An applicant must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *United States v. City of New York,* 198 F.3d 360, 364 (2d Cir.1999) (citation and quotation omitted). Failure to satisfy any one of these criteria justifies denial of the application to intervene.

### B. Permissive Intervention

Permissive intervention may be allowed at the court's discretion under Fed.R.Civ.P. 24(b)(2) " 'when an applicant's claim or defense and the main action have a question of law or fact in common.' " When exercising its discretion, " 'the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' " *United States v. City of New York,* 198 F.3d 360, 367 (2d Cir.1999) (citation omitted). The degree of discretion granted to a trial court in considering permissive intervention is extremely deferential. "Reversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73 (2d Cir.1994). When an existing party is a government entity, representing the interests of the proposed intervenor, courts are unwilling to grant permissive intervention. *Menominee Indian Tribe v. Thompson,* 164 F.R.D. 672, 678 (W.D.Wis. 1996).

## II. Application: The Motion for Intervention as of Right

### A. Whether EPX has a timely filed an application

Neither the FTC nor the Receiver contests EPX's timely filing of its application to intervene.

### B. Whether EPX shows an interest in the action

The kind of 'interest' contemplated by Rule 24(a)(2) " 'refers not to any interest the applicant can put forward, but only to a legally protectable one.' " *Seils v. Rochester City School Dist.,* 199 F.R.D. 506, 510 (W.D.N.Y.2001) (citations omitted). The interest that will satisfy the requirements of the rule has been characterized "as one which is significantly protectable, direct, and immediate, as opposed to one which is remote or contingent." *Id.* (citations omitted).

In this case, EPX asserts that it has a direct financial interest in this action, as it is owed a substantial amount of money by cer-

tain of the First Capital defendants. Specifically, EPX claims it has a "significant interest in the Dakota Financial Group account", and points to an October 9, 2000 letter from Barone and Giambrone, Item 61, Ex. D, which reveals their intention to remit funds in the Dakota account to EPX. The Receiver has challenged EPX's alleged interest, pointing out that EPX's claim to the Dakota account is based on the "earmarking" of those funds by the defendants, but such " 'earmarking' does not create a significant, legally protectable interest" such as ownership or lien rights. Item 73, ¶ 28.

■ The court agrees with the Receiver that EPX's financial interest in the Dakota account does not carry legal force, as "earmarking" simply represents intent to pay, not a legally binding contractual obligation. However, EPX does assert an interest in the funds held by the Receiver, beyond and perhaps including those in the Dakota account. If the FTC is successful in prosecuting this case, or in reaching settlement with the First Capital defendants, the funds held by the Receiver will be set aside to compensate consumers for their injuries. The resolution of this litigation will affect EPX's property rights to the funds owed them by the First Capital Defendants. The Receiver has indicated that EPX will be treated as a consumer: "[T]o the extent that EPX has issued refunds to consumers, it should certainly be allowed to join the line of consumers who have not yet received refunds and be paid, on a pro-rata basis, its share of the Receivership funds (in whatever manner those funds are ultimately distributed)." Item 73, ¶ 9. Thus EPX has asserted a sufficient interest in this action so as to satisfy the second element required to intervene as of right.

### C. Whether disposition of the action will impair or impede the proposed intervenor's ability to protect its interests

The third element of the intervention as of right standard is met where the intervenor demonstrates that, absent intervention, the disposition of the action may, as a practical matter, impede or impair its interests. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66,

70 (2d Cir.1994). *"Impair* refers to a diminution in strength, value, quality, or quantity. *Impede* means to obstruct or block. Thus, impairment of a purported interest, or a potential decrease in its value, is typically easier to establish than an impediment, which involves a total obstruction of an interest." *6 Moore's Federal Practice*, § 24.03[3][a] (Mathew Bender 3rd ed.).

EPX argues that, absent intervention, its interest in the subject matter of the litigation, including the funds in the Receiver's general account and in the Dakota account will be impaired, since its prospects for reimbursement would be substantially diminished. Item 61, ¶ 19. It also argues that this is the only forum in which its purported entitlement to the Dakota funds may be litigated. Item 76, p. 8.

In response, FTC argues that the Second Circuit has "consistently denied motions for intervention by right from applicants who remain free to pursue adjudication of their rights in independent actions or in other proceedings," citing *United States v. City of New York*, 198 F.3d 360 (2d Cir.1999). Item 71, p. 6. FTC and the Receiver note that EPX has a number of options, including participation in the Receiver's administration of the Receivership defendants' assets, if and when the court orders such distribution. But EPX also has another option independent of this action. After the receiver makes distribution, if EPX is not satisfied, it would be free to bring an action against Worldwide and against Barone and Giambrone as individual signatories and guarantors on the Promissory Note dated August 4, 2000. Item 61, Ex. C.

Other than asserting that this venue is the only one available to EPX to litigate its contract claims, EPX does not address its ability to bring a lawsuit once the stay is lifted. It appears that the issues decided in this litigation would have no negative *res judicata* effect on any subsequent litigation brought by EPX. *See Federal Trade Commission v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 607 (N.D.Ill.2001).

In addition, EPX argues that its interest will be impaired because its prospects for

reimbursement would otherwise be diminished, which would make an independent action "futile." Item 76, p. 8. But as the court pointed out in *Med Resorts,* the FTC's intervention protects, and does not impair, consumer rights, and makes it easier for consumers-and creditors-to protect their interests. *Med Resorts,* 199 F.R.D. at 607. And, as Judge Larimer pointed out in *Seils,* even if the proposed intervenors would face obstacles in bringing their own lawsuit, as argued in *In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 196–99 (2d Cir.2000), this would not, as a matter of law, require intervention. *Seils,* 199 F.R.D. at 511.

■ The court agrees with FTC and the Receiver that EPX cannot establish impairment of its claim. The denial of intervention will not amount to a foreclosure of opportunities for EPX to vindicate its claims. Since EPX has the opportunity to seek alternate avenues of relief, and its interests are represented by the FTC and protected by the Receiver as one among a number of claimants in the FTC action, its interest is not impaired under Rule 24(a)(2).

**D. Whether the intervenor's interests are adequately protected**

■ EPX's motion for intervention falters particularly on the final element required for intervention. In most cases, the burden on the proposed intervenor is minimal in an effort to show that the existing parties inadequately represent its interests: the "Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (citation omitted).

■ However, this minimal standard changes when a government entity is a party and asserts its status as a guardian or representative of all of its citizens, as the FTC does here. In such a circumstance, the governmental entity deserves special consideration and deference as an adequate representative of the interests of would-be intervenors. "The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae." City of New*

*York,* 198 F.3d at 367 (citing *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 985 (2d Cir.1984)). In *Hooker,* the court said, " 'where governmental parties are already present in a case, private parties must make more than a minimal showing of inadequate representation,' " requiring the proposed intervenor to show that the governmental party is " 'ill-equipped or unwilling' " to protect their interests before finding inadequate representation. 749 F.2d at 985 (citations omitted).

In this circuit, "[w]hether or not representation of an intervenor's interest by existing parties is to be considered inadequate hinges upon whether there has been a showing of (1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence." *In re Infiltrator Systems, Inc.,* 1998 WL 1574648 *4 (D.Ct. Nov. 6, 1998) (citations and quotation omitted).

EPX has focused on the minimal burden of this element in general (when not applied to governmental parties), and finds support in *Chiglo v. City of Preston,* 104 F.3d 185 (8th Cir.1997), for the proposition that "when the proposed intervener stands to gain or lose something from the litigation in a way different from a government agency, the government agency should not be presumed to adequately represent the intervenor's interests." Item 62, p. 8. EPX then cites the FTC's and Receiver's nonresponsiveness to its written inquiries as examples of the divergence of its interests and those of the Receiver. It claims that the FTC is only interested in representing interests of consumers; and since EPX is technically not a consumer, FTC will not represent its interests. Lastly, in its Reply, apparently in an effort to overcome the presumption of a government entity's adequacy in representation, and to remedy the fact it had previously made no showing of collusion, adversity of interest, possible nonfeasance, or incompetence, EPX raises the extremely curious—and conclusory—assertion that FTC and the defendants colluded in the entry of the Stipulated Injunction, and for that reason EPX should be allowed to intervene. The FTC responds that EPX has repeatedly asserted that it is "stepping into the shoes

of the consumers" injured by the First Capital defendants; and since FTC is charged by law with representing consumers' interests, and FTC brought the instant action against those defendants under the mandate of that law, "to the extent that EPX purports to step into the shoes of consumers, it cannot argue that its interest differs from the FTC's interest." Item 71, p. 7. It points out that district courts have "routinely rejected motions for intervention filed by individual consumers" in cases where the FTC is the plaintiff, on the basis that the FTC adequately represented their interests. Item 71, p. 8. The Receiver adds that just as the government acts in a representative capacity and is presumed to represent citizens adequately, by analogy, the Receiver, as an officer of the court, is also presumed to represent all claimants adequately. The Stipulated Preliminary Injunction directs the Receiver to "conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury *to consumers or to creditors* of the Receivership Defendants ...." Item 24, p. 16, ¶ D (emphasis added). The Receiver has indicated that EPX "stands in the place of damaged consumers for the purposes of entitlement to funds held by the Receiver" and will be treated as any other claimant. Item 73, ¶ 9. The Receiver notes that its and FTC's interests are the same as those of EPX: all parties want consumers, or those standing in the shoes of consumers, to receive the best possible recovery from the Receivership funds.

EPX's argument is, basically, that it wants to be first in line to collect funds held by the Receiver. It aspires to be paid in full. EPX regards the claims by consumers as potentially compromising its own claims, and views both the Receiver and FTC as ignoring its interests. It seeks, in George Orwell's words, to be "more equal" [4] than the other injured consumers.

4. The only Commandment left on the barn wall was:
"All animals are equal
But some animals are more equal than others."

The court does not view EPX's concern that it may not be paid in full as supporting its argument that the FTC/Receiver will not adequately represent its interests. In *Washington Electrical Coop., Inc. v. Mass. Municipal Wholesale Elec. Co.*, the Second Circuit observed that the party and the proposed intervenor may have differing motives for recovering the money at issue: "the former wants the money back for itself, while the latter wants to assure that money due consumers is returned to them." 922 F.2d 92, 98 (2d Cir.1990). The court concluded: "[A] putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Id.* (citation omitted).

Given that the Preliminary Injunction is in place and governs actions by parties and non-party claimants, EPX cannot ignore the letter and spirit of this court's Order by attempting to leverage its claims by intervening so as to gain payment beyond its pro-rata share, while at the same time ignoring the Injunction's stay on all actions against the defendants. It may be that EPX's claims will or will not be paid in full, depending on the final identification of the total pool of claims, and the verification of EPX's claims through an appropriate claims review process.

The court has considered the additional arguments raised by EPX in its Reply and finds them without merit.

■ The court agrees with the FTC and the Receiver that EPX cannot show that its interests are not adequately protected in this litigation. Given the heightened showing of inadequate representation if a government party acts on behalf of its citizens to redress injury they suffered, as FTC does here, the court finds that EPX has not met the fourth criteria for intervention as of right.

### III. Application: The Motion for Permissive Intervention

EPX argues that common questions of law and fact exist in this action between FTC and

George Orwell, *Animal Farm* (Middlesex: Penguin Books, 1951) 114.

EPX. As "common facts," EPX points to consumer dissatisfaction resulting from Worldwide's telemarketing operations. As "common questions of law," EPX asserts that both FTC and EPX are seeking reimbursement based on Worldwide's conduct, which has injured consumers. EPX maintains that its and FTC's entitlement to the funds collected by the Receiver serves as "[a] common issue of law or fact." Item 62, p. 10. In conclusory fashion, EPX also submits that no undue delay or prejudice will result if the court allows it to intervene, that intervention will not unnecessarily complicate or prolong the proceeding, and that it presents "a unique prospective [sic] or expertise relative' to the resolution of the dispute." *Id.*, pp. 10–11.

Both FTC and the Receiver point out that EPX's motion for intervention is an inappropriate attempt to evade the terms of the Stipulated Preliminary Injunction entered on November 9, 2000. Part XXI of that document, entitled "Stay of Other Actions," provides:

> A. Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all customers, principals, investors, creditors, . . . and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Defendants or Receivership Defendants, . . . be and are hereby stayed from:
>
> > 1. Commencing, prosecuting, continuing, entering or enforcing any suit or proceeding . . .
> > 2. Accelerating the due date of any obligation or claimed obligation . . . .

Item 24, p. 23.

■ The court agrees that the terms of the Stipulated Preliminary Injunction prevent EPX from filing suit or from intervening in this suit; and for that reason alone, the court would decline to exercise its discretion to allow EPX to intervene by permission.

■ In addition, as FTC points out, the case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice. *See The Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton,* 178 F.R.D. 39, 44 (E.D.N.Y.1998).

■ While the FTC and EPX both seek to maximize the funds out of which consumers who have been injured by the First Capital defendants may be remunerated, that is where the similarity ends. A "coincidence of financial interests" does not satisfy the standard for permissive intervention. *In re Infiltrator Systems, Inc.,* 1998 WL 1574648 at * 5 (citation omitted). In its complaint, FTC sought equitable relief against the First Capital defendants as a result of alleged misrepresentations made to consumers which resulted in disclosure of consumers' credit card numbers. On the other hand, EPX seeks essentially legal relief on the basis of its Agreement and subsequent promissory note with defendant Worldwide. Thus, EPX's claims would implicate collateral issues relating to its contract. Moreover, including this private action in FTC's proceeding would delay the granting of relief to consumers whose credit cards have been assessed charges by defendants. "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like . . . ." *Id.* (citation omitted). *See City of New York,* 198 F.3d at 367–68. Consequently, EPX's motion for permissive intervention is denied.

## CONCLUSION

Based on the reasoning above, EPX's motion for intervention as of right, pursuant to Fed.R.Civ.P. 24(a)(2) and its motion for permissive intervention, pursuant to Fed.R.Civ.P. 24(b)(2), Item 61, is denied.

So ordered.