ONEIDA INDIAN NATION OF WISCONSIN, Plaintiff-Appellee,

Oneida of the Thames Band, Plaintiff-Appellee,

The Houdenosaunee, et al., Applicants-Intervenors-Appellants,

v.

STATE OF NEW YORK, et al., Defendants-Appellees.

No. 893, Docket 83–7910.

United States Court of Appeals, Second Circuit.

Argued Feb. 22, 1984.

Decided April 5, 1984.

Opinion on Denial of Rehearing May 29, 1984.

Robert T. Coulter, Washington, D.C. for applicants-intervenors-appellants, The Houdenosaunee and certain constituent nations.

Richard Dauphinais, Washington, D.C. (Arlinda Locklear, Native American Rights Fund, Washington, D.C., Francis Skenandore, Oneida Tribal Law Office, Oneida, Wis., Norman Dorsen, New York University Law School, New York City, on the brief), for plaintiff-appellee Oneida Indian Nation of Wisconsin.

Daan Braveman, Syracuse, N.Y., Syracuse University College of Law, for plaintiff-appellee Oneida of the Thames Band.

Allan Van Gestel, Boston, Mass. (Jeffrey C. Bates, Christopher S. Dalton, Goodwin, Procter & Hoar, Boston, Mass., on the brief), for defendants-appellees Twelve New York Counties and Valentine Ryan, individually and on behalf of defendant class.

Richard K. Hughes, Syracuse, N.Y. for defendants-appellees St. Regis Paper Co., individually and as class representative, and Georgia Pacific Corp., as class representative.

Before NEWMAN and KEARSE, Circuit Judges, and BRIEANT, District Judge.*

BRIEANT, District Judge:

■ Appellant, the Houdenosaunee, or "People of the Longhouse," also known as the Six Nations Iroquois Confederacy, together with five of its constituent nations, the Mohawk, Oneida, Onondaga, Seneca and Tuscarora nations, appeal from an order of the United States District Court of the Northern District of New York (McCurn, J.), which denied leave to intervene as of right in a pending action for ejectment and to recover damages for trespass to real property, which litigation is more particularly described below.[1] For the reasons stated below, we reverse and remand with instructions to permit intervention as of right with respect to the claims of the intervenors to declare their title to and recover possession of the lands at issue in the litigation and for damages in connection with such claims. Whether the intervenors, once having been allowed to participate, should be permitted also to allege additional claims, we leave to the informed discretion of the district court.[2]

The proposed intervenors allege that the Houdenosaunee and its constituent nations are each recognized as Indian nations or tribes by the United States as a matter of law by reason of prior treaties with the United States.[3] We believe the proposed intervenors have demonstrated that certain of the claims they wish to assert bring them clearly within Rule 24(a)(2), F.R. Civ.P., which reads in relevant part as follows:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated

---

* The Honorable Charles L. Brieant of the United States District Court for the Southern District of New York, sitting by designation.

1. The Cayuga Nation, the sixth member of the confederacy, did not seek intervention in this case, and is maintaining a separate action now pending in the Northern District of New York, *Cayuga Nation of New York v. Cuomo*, 80–CV–930. The position of the Seneca Nation, nominally an intervenor, is more complicated. A group describing itself as the "Seneca Nation" appears as one of the five constituent nations of the Houdenosaunee seeking intervention. (Complaint in Intervention, ¶ 8). However, a group styling itself as the "Seneca Nation of Indians," which claims to own and occupy the Allegany, Cattaraugus and Oil Springs Reservations in New York, disclaims any connection with the application and denies that the Houdenosaunee has authorization to represent it. (Disclaimer of Representation of Seneca Nation of Indians, dated July 20, 1983). This latter group, however, also states that it does not have sufficient information upon which to form a belief as to whether counsel to the Houdenosaunee has authority to "represent the Tonawanda Band of Senecas, a separate Indian tribe, in its own right and not as a representative of the Seneca Nation." *Id.*

2. Unless otherwise authorized by the district court, intervention should not enlarge the bounds of the lands sought to be recovered. Nor need the intervenors be allowed to encumber the litigation with their proposed claims for waste, for violation of 42 U.S.C. § 1983, and breach of fiduciary duty, not pleaded by the Oneidas. An action for waste is distinguished from a trespass claim because the former assumes a valid lease or particular estate in the defendant and reversion in plaintiff, while the latter assumes unlawful intrusion by defendant in violation of the rights of present possession of plaintiff. Here the original plaintiffs assert that the lease of September 22, 1788 made at Fort Schuyler (Utica, New York) was void or voidable, and claim only trespass damages.

3. This allegation is not challenged insofar as concerns the five constituent nations of the Houdenosaunee which seek to intervene. The status of the confederacy itself as a separate entity recognized as an Indian nation by the United States cannot be determined prior to intervention. While we note that it does not appear on the most recently published list of Indian nations so recognized, see 48 Fed.Reg. 56862 (Dec. 22, 1983), the allegation that prior treaties confer this status upon the confederation cannot be regarded as frivolous on its face.

that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Plaintiffs, the Oneida Indian Nation of Wisconsin and the Oneida of the Thames Band, initiated this litigation in 1979 to declare their title to and recover possession of more than five million acres in central New York State, and obtain damages. The claims concern a swath of land 50 to 60 miles in width, extending from Pennsylvania to Canada, encompassing portions of 13 New York counties. Among the issues before the district court, in addition to the ultimate question of title and the right to possession, is the question of whether certain treaties made by the State of New York with the Oneida Indian Nation, including the Treaty concluded at Fort Herkimer, New York on June 23, 1785 and the Treaty concluded at Fort Schuyler (now Utica, New York) on September 22, 1788, are void or voidable for non-compliance with a 1783 Proclamation of the Continental Congress and provisions of the Articles of Confederation said to be applicable thereto, and if so, what effect, if any, treaties made by the United States, including the Treaty concluded at Fort Stanwix (now Rome, New York) on October 22, 1784 (7 Stat. 15), the Treaty concluded at Fort Harmar (now Marietta, Ohio)[4] on January 9, 1789 (7 Stat. 33), and the Treaty concluded at Canandaigua, New York on November 11, 1794 with the Houdenosaunee (7 Stat. 44), have upon the rights of the parties.

■ The district court dismissed the complaint for failure to state a claim on which relief can be granted and denied, without prejudice, the motion to intervene as moot. *Oneida Indian Nation of New York v. State of New York*, 520 F.Supp. 1278 (N.D.N.Y.1981). On appeal, this Court, affirmed in part, reversed in part, and remanded for "additional proceedings in order fully to develop the complex factual and legal issues underlying certain claims raised by the Oneidas." 691 F.2d 1070, 1073 (2d Cir.1982). Familiarity of the reader with these prior opinions is assumed. The district court interpreted our

mandate as requiring an evidentiary hearing to aid in its reconsideration of the original motion to dismiss previously granted by that court. Discovery and preparation for a hearing followed, and appellants renewed their motion to intervene.

In denying intervention, the district noted that the intervenors' proposed complaint essentially comprises two aspects. The first aspect raises the same issue that this Court remanded to the district court for reconsideration: whether the "aboriginal title to land, confirmed and guaranteed by federal treaties and pronouncements pursuant to powers delegated to the federal government under the Articles of Confederation, was never extinguished since the state treaties were improperly concluded without federal consent." 691 F.2d at 1074. As to that aspect of the complaint, the district court concluded that, though the intervenors allege a sufficient interest in the subject land and are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest," their position on the remand issues is essentially identical to that of the original plaintiffs so that the latter's advocacy is adequate to protect their interests.

Turning to the second aspect of the proposed complaint, the district court observed:

There can be little doubt that the second aspect of the complaint-in-intervention is an assertion of interests adverse to those of the Oneidas, and with respect to which representation by the Oneidas would be inadequate, to state the obvious. * * * [M]ovants state that most of upstate New York, including the instant claim areas, belongs to the Houdenosaunee as a confederacy and that the subject land is not the separate property of the Oneidas, apart from the confederacy. Movants also contend that the Oneidas lacked authority from the Houdenosaunee to enter into the treaties with New York State whereby the land was conveyed.

This aspect of the complaint is based on the Houdenosaunee's allegation that under its ancient organic law called Gayanerako-

---

4. Colonel, later Brig. Gen., Joseph Harmar sent by Congress in 1785 with federal troops, the 1st United States Regiment, to establish a fort, and to burn the homes and crops of the settlers in the Ohio. Some of these "intruders," as they were called, claimed to hold under private arrangements with the Iroquois, but their entry had not been authorized by the Congress.

wa,[5] the confederation rather than the constituent nations, holds the land title and has the sole right to sue to recover this vast tract. Support for this Indian version of the statute quia emptores was somewhat vague in the district court.[6] However, except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention, see *LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir.1982), but rather turns on whether the applicant has demonstrated that its application is timely, that it has an interest in the subject of the action, that disposition of the action might as a practical matter impair its interest, and that representation by existing parties would not adequately protect that interest. *LaRouche, supra* at 257; *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).

In addition to the claims based on Gayanerakowa, asserted by the Houdenosaunee, two of the constituent nations, the Mohawk and the Onondaga claim aboriginal ownership of parts of the same tract described in the complaint and claimed by the plaintiffs.[7]

Because we believe that there is a substantial likelihood that the claims and interests of the proposed intervenors concerning the disputed lands may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case, see *New York Public Interest Research Group, Inc. v. The Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir.1975),

we conclude that they may intervene as a matter of right.[8]

The men and women who gathered at the treaty fires some two centuries ago at the places mentioned, will not testify; their mouths are stop't with dust, as are those of their children's children. Accordingly, the hearing to be held by the district court will be unlike the traditional trial of an issue of fact. Instead, the trial court will consider issues of law and statutory construction, against the historical background of the events surrounding the treaties, and the adoption of the applicable portions of the Articles of Confederation relied on by plaintiffs. This factual background in turn will probably be derived from the expert testimony of historians and others, and consideration by the court of contemporaneous documents and oral traditions. Ordinarily a judgment in an ejectment or quiet title action will not affect the interests of others than the parties or those in privity with them. Such actions do not operate *in rem* upon the land itself, *Restatement (Second) of Judgments* § 30 comment a (1982), and therefore principles of collateral estoppel by judgment are not implicated. *See Northern Terminal Corporation v. Butterly*, 137 Misc. 165, 241 N.Y.S. 552 (N.Y.Sup.Ct.1930), *aff'd*, 234 A.D. 680, 252 N.Y.S. 950 (1st Dep't 1931); 25 Am.Jur.2d *Ejectment* § 129 (1966). However, there is a significant likelihood that the ultimate resolution of this litigation will lead to the conclusions of law on issues of first impression, or mixed findings of fact and law, which will implicate principles of *stare decisis* with respect to the treaties cited above, and the land titles

---

**5.** We adopt the spelling used by the district court and the intervenors (see Memorandum Decision and Order, dated October 10, 1983, quoting from Memorandum of Movants), although other documents drafted by the Houdenosaunee and included in the record refer to the Great Law as "Gayanhlahgonah."

**6.** The Seneca Nation administers substantial leased lands in Western New York, including most of downtown Salamanca. In so doing it has conducted recurrent and successful litigation in its own right in the federal courts, without Houdenosaunee participation and with no deference shown to Gayanerakowa. See generally, *The New York Indians*, 72 U.S. (5 Wall.) 761, 18 L.Ed. 708 (1866), *rev'g, Fellows v. Denniston*, 23 N.Y. 420 (1861); *United States v. Forness*, 125 F.2d 928 (2d Cir.1942), *rev'g United States v. Forness*, 37 F.Supp. 337 (W.D.N.Y.

1941); *City of Salamanca v. Seneca Nation of Indians*, 47 F.Supp. 939 (W.D.N.Y.1942); *United States v. City of Salamanca*, 27 F.Supp. 541 (W.D.N.Y.1939).

**7.** The constituent nations which do not assert ownership in their own right have an interest in the lawsuit by virtue of their membership in the confederation.

**8.** Plaintiff Oneida of the Thames Band supported the motion to intervene by the Houdenosaunee. Plaintiff Oneida Indian Nation of Wisconsin opposes intervention. In light of our view of the matter we do not reach the issue of whether the Oneida of the Thames Band is, as it suggests, an inadequate representative of the Houdenosaunee interest because of its straitened finances and reliance on *pro bono* counsel.

at stake here, and which would control any subsequent lawsuit by the intervenors. Though the apprehended force of *stare decisis* will not support intervention as of right in all cases, it does so in the unusual circumstances of this case where the intervenors' ability to protect their interests will be impaired or impeded "as a practical matter" by a judgment entitling the plaintiffs to recover the disputed lands.

Moreover, we do not agree that the existing plaintiffs represent adequately the interests of the proposed intervenors, even as to the first aspect of the intervenors' complaint. Virtual representation should be tested by reference to the pleadings, especially the relief sought. In this case, the intervenors and the existing plaintiffs are conflicting claimants to the same lands. This alone precludes representation of the intervenors' interests by plaintiffs. It may well be, as the district court reasoned, that in the next step scheduled in this litigation, a hearing which is addressed primarily to the development of the background of historical fact against which the treaties and Articles of Confederation may be construed, the intervenors will take essentially the same position as plaintiffs, although this too is far from certain.[9] But there is no assurance that the lawsuit will end at that point. There the interests of the parties will diverge, if they are not already divergent. Accordingly, intervention as of right is warranted.

■ In our consideration of the issue of intervention we have placed no reliance on the effect, if any, of sovereign immunity of the Indian nations, which ordinarily cannot sue each other or be sued in the federal courts without their consent. By bringing an action, either as a plaintiff or an intervening plaintiff, a litigant waives sovereign immunity to the extent of submitting its own claims pleaded for adjudication by the court, and also subjects itself to any defensive counterclaim by way of set-off pleaded by a defendant. *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 879 n. 5 (2d Cir.1981). Although intervention will not in itself waive immunity from possible cross-claims between the original plaintiffs and the intervenor plaintiffs, under certain foreseeable eventualities of the litigation, some plaintiffs may prevail perhaps to the eventual detriment of others. This is inherent in the principle of *stare decisis*, whether intervention were permitted or not.

Oneida Indian Nation of Wisconsin opposes intervention on the ground that the second aspect of the intervenors' complaint raises an intra-tribal or inter-tribal dispute among Indians as to which federal courts may not intervene, *see Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). However, this is not such a dispute; rather it involves interpretation of federal statutes, treaties and provisions of the Articles of Confederation, all of which are clearly justiciable. Absent intervention and in light of potential sovereign immunity problems, the first prevailing Indian nation to recover a parcel of land may moot all pending federal lawsuits of other Indian groups seeking to recover the same land.[10]

We find it unnecessary to consider appellants' alternative motion for permissive intervention.

The order appealed from is reversed and remanded for proceedings consistent herewith.[11]

On Rehearing

PER CURIAM:

■ The Oneida Indian Nation of Wisconsin seeks leave to file a petition for

---

**9.** The Houdenosaunee maintains that it intends to offer evidence concerning the history of its relations with the United States. This evidence, it claims, will shed light on the meaning of the operative treaties and will not be submitted by the Oneida Indian Nation of Wisconsin since the evidence also tends to show the superior possessory rights of the Houdenosaunee. This allegation suggests that the intervenors will not adopt the same position as the original plaintiffs. *See New York Public Interest Research Group, Inc. v. The Regents of the University of the State of New York, supra,* 516 F.2d at 352.

**10.** We estimate that approximately a half dozen Indian land claim cases are pending in the Northern District. Certiorari was granted by the Supreme Court on March 20, 1984 in one such case, *sub nom. County of Oneida v. Oneida Nation of New York,* —— U.S. ——, 104 S.Ct. 1590, 80 L.Ed.2d 123 (1984), reported below as *Oneida Indian Nation of New York v. County of Oneida,* 719 F.2d 525 (2d Cir.1983).

**11.** The district court on remand may consider whether supplemental notice should issue advising the absent class members of the pendency of the claims asserted by the intervenors, a point upon which we express no opinion.

rehearing out of time. It urges that our opinion has permitted the intervenor to assert claims based on Indian tribal law over which the district courts lack jurisdiction and has ignored that plaintiffs' sovereign immunity from cross-claims by the intervenors. Neither apprehension is well founded. The intervenor has been allowed to participate as a party primarily to guard against encountering the stare decisis effect of a decision in favor of the defendants and also to assert its own claims against the defendants to the extent that such claims are grounded on federal law. It remains to be determined on remand to what extent, if any, the intervenor is entitled to have the district court interpret tribal law. Sovereign immunity is not a barrier to such intervention because, unlike the situation in *United States v. Dry Dock Savings Institution*, 149 F.2d 917 (2d Cir. 1945), the intervenor's claims do not necessarily entail the granting of relief against the plaintiffs. Sovereign immunity does not bar the intervenor from asserting its own federal law claim against the defendants, even though successful prosecution of the intervenor's claim might have at least stare decisis effect on the plaintiffs' claim. Whether sovereign immunity might bar some aspects of the intervenor's claims for relief can better be decided upon remand after determination of the merits. *See Atlantis Development Corp. v. United States*, 379 F.2d 818, 829 n. 34 (5th Cir. 1967).

Leave to file the petition for rehearing is granted, and the petition is denied.