**THE ONEIDA INDIAN NATION OF NEW YORK;  the Oneida Nation of Wisconsin;  and the Oneida of the Thames, Plaintiffs,**

and

**The United States of America, Plaintiff–Intervenor,**

v.

**The State of NEW YORK;  the County of Madison, New York;  and the County of Oneida, New York, Defendants.**

No.  74–CV–187.

United States District Court, N.D. New York.

May 21, 2001.

---

Thomas D. Barr, Rowan D. Wilson, Cravath, Swaine Law Firm, Thomas G. Rafferty, Cravath, Swain, New York City, William W. Taylor, III, Caroline A. Judge, Zuckerman, Spaeder Law Firm, Washington, DC, for The Oneida Indian Nation of New York State.

Arlinda Locklear, nam, Office of Arlinda Locklear, Jefferson, MD, for The Oneida Indian Nation of Wisconsin.

Daan Braveman, Syracuse University College of Law, Syracuse, NY, Carey R. Ramos, Robert S. Smith, Paul, Weiss Law Firm, New York City, for The Thames Band of Canada.

William H. Pease, AUSA, Office of the United States Attorney, Syracuse, NY, Charles Jakosa, NAM – AUSA, Charles E. O'Connell, Jr., AUSA, U.S. Department of Justice, Washington, DC, for United States of America.

G. Robert Witmer, Jr., Nixon, Peabody Law Firm, Rochester, NY, David B. Roberts, AAG, Office of Attorney General, State of New York, Albasny, NY, for County of Oneida, New York, County of Madison, New York.

Christopher W. Hall, Office of Attorney General, State of New York, Albany, NY, for The State of New York.

John J. Dee, Bond, Schoeneck Law Firm, Syracuse, NY, for Bond, Schoeneck & King.

Marilyn Ward Ford, Quinnipiac Law School, Hamden, Ct, for New York Brothertown Indian Nation.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is a motion by the New York Brothertown Indian Nation (also "Putative Intervenor") to intervene in the above captioned litigation as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, for permissive intervention under Federal Rule of Civil Procedure 24(b)(2). For the following reasons, Putative Intervenor's motion is GRANTED.

### I. BACKGROUND

The present motion arises out of the ongoing Oneida Indian litigation transferred to the Court earlier this year. In this litigation, the above captioned Plaintiffs (collectively the "Oneidas") seek damages from New York State, the County of Madison, and the County of Oneida for their alleged violation of various treaties and federal statutes that purportedly gave Plaintiffs rights to land located in and around Syracuse, New York. The New York Brothertown Indian Nation alleges that it has a legally cognizable interest in portions of land that are at issue in the instant suit and that it is entitled to intervene in the current litigation to protect this interest.

Ronald "Thunderbolt" Champlain and Maurice "Storm" Champlain claim to be direct descendants from an amalgamation of a half-dozen tribes who call themselves the New York Brothertown Indians.[1] Pursuant to a Treaty executed in 1774, prior to the founding of the United States, the Oneida Indian Nation granted "said New England Indians"[2] a tract of their land amounting to 12 X 13 square miles. In 1788, pursuant to the terms of the Treaty of Fort Schuyler, the Oneida Indian Nation allegedly reduced the amount of land granted to the New York Brothertown Indian Nation to a 2 × 3 square mile tract and reconveyed the remaining portion to New York State in violation of the Treaty of 1774. On November 11, 1794, the United States entered into the Treaty of Canandaigua with members of the Iroquois Confederacy "and the Indians of the other nations residing among and united with them."[3] In this treaty, the Federal Government allegedly acknowledged the New York Brothertown Indian Nation's right to the 12 × 13 tract of land.

The New York Brothertown Indian Nation asserts that New York State violated the Treaty of Canandaigua and a federal statute protecting their rights to this land[4] when it enacted an "Act Relative to Lands in Brothertown" on March 31, 1795. Pursuant to that Act, a state appointed trustee was au-

---

1. When portions of this amalgamation were forced off their land in the 1700's, a majority fled to Wisconsin and became known as the Brothertown Indians of Wisconsin. That entity is now petitioning the Bureau of Indian Affairs for federal recognition and is not a putative intervenor in the current litigation. The New York Brothertown Indian Nation alleges that its ancestors never fled to Wisconsin and have continuously maintained a presence in New York.

2. The New York Brothertown Indian Nations claim that the term "said New England Indians" contained in the Treaty of 1774 refers to their ancestors.

3. The New York Brothertown Indian Nations also claim that the term "and the Indians of the other nations residing among and united with them" contained in the Treaty of Canandaigua refers to their ancestors.

4. The New York Brothertown Indian Nation asserts that New York State violated the Indian Trade and Intercourse Act and the Full Faith and Credit Clause of the United States Constitution. See 28 U.S.C. § 177; see also U.S. Const. Art. IV, § 1.

thorized to allegedly divide the New York Brothertown Indian Nation's land between white settlers against the tribe's will. The New York Brothertown Indian Nation asserts that this conveyance of land, as well as the prior reductions of land, were all invalid as the Treaty of 1774 was never abrogated and New York State lacked the power to attain its land under either the Act or the Treaty of Fort Schuyler.[5] Moreover, because the New York Brothertown Indian Nation land claim allegedly involves portions of the land that the Oneida Indian Nation claims as part of the above captioned suit, it argues that it is entitled to intervene as of right pursuant to Rule 24(a)(2) or permissively under Rule 24(b)(2).[6]

## II. DISCUSSION

### A. Standard Governing Intervention as of Right Under Fed.R.Civ.P. 24(a)(2)

■ The standard governing intervention as of right under Rule 24(a)(2) is well established. "[A]n applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to this action." *New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992). Under Rule 24(a)(2), the proposed intervenor must have a "direct, substantial, and legally protectable" interest in the subject matter of the action. *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 96 (2d Cir.1990). At the same time, "intervention cannot be used as a means to inject collateral issues into an existing action." *Id.* at 97. The Court will address each of the required elements seriatim.

### B. Timely Filing of Intervenor's Application

■ The timeliness of a motion to intervene is "evaluated against the totality of the

circumstances before the Court." *Farmland Dairies v. Commissioner of the New York State Dep't of Agric. and Mkts.,* 847 F.2d 1038, 1043–44 (2d Cir.1988) (citations omitted). When considering the totality of circumstances surrounding the timeliness of a putative intervenor's motion to intervene, a Court should look at (1) how long the applicant had notice of the interest before making the motion to intervene; (2) prejudice to existing parties resulting from the delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 84 (2d Cir.2001). Application of these considerations to the instant suit reveals that the New York Brothertown Indian Nation's motion is timely.

#### 1. *Applicant's Notice of Interest*

■ As to the first consideration, assuming for the sake of argument that Putative Intervenor maintained its tribal status over the course of the previous two centuries, it is not entirely clear to the Court why it did not have either actual or constructive notice of its alleged claims to the land at issue in the instant litigation upon the filing of the current suit more than twenty three years ago. The New York Brothertown Indian Nation argues that its tribal records, which extend back to the 1600s and cover the time periods relevant to its land claim, were incomplete. It further argues that only recently was it able to compile the necessary documentation to support its claim for intervention in the instant litigation.

The Court accepts the New York Brothertown Indian Nation's argument and notes that much of the documentation surrounding its claim for intervention consists of official records extending back to the 1600s and to the end of the colonial period. Given the antiquity of these claims and the historical hardships placed on Putative Intervenor during this time period, it is not inconceivable

---

**5.** For the same reasons, the New York Brothertown Indian Nation also asserts that a quitclaim deed issued in 1811 by the Oneida Indian Nation to New York State, deeding New York the remainder of the Brothertown Indian Nation's land for $1,200 was also invalid.

**6.** Because the Court concludes that Putative Intervenor is entitled to intervene as of right in the instant litigation, it does not address its arguments regarding permissive intervention.

that the necessary documentation was lost and not discovered until recently. As a result, the Court finds that Putative Intervenor had notice of its claims upon completion of the requisite historical, anthropological, and linguistic research underlying its claims and it could not have filed its motion for intervention until this was complete.

### 2. *Prejudice to the Existing Parties Resulting From Delay*

The Court also notes that the existing parties have not suffered any prejudice as a result of the approximately twenty six year delay between the institution of this litigation and the filing of the instant motion to intervene. As Judge McCurn noted approximately eight months ago, the case, although over twenty six years old, "is still in its initial stages, with no discovery having been conducted and until now motion practice had been minimal and of no real import." *See Oneida Indian Nation of New York v. County of Oneida,* 199 F.R.D. 61, 75 (N.D.N.Y. 2000).[7] Given this fact, it is implausible for the existing parties to claim prejudice as a result of Putative Intervenor's delay in filing its motion for intervention.

Nevertheless, Plaintiffs argue that their claims can be ready for a damages trial within the year as the case law regarding Defendants' liability is largely settled. Plaintiffs further argue that because the New York Brothertown Indian Nation is not a federally recognizes tribe and seeks judicial recognition of its status as a tribe, allowing intervention will unduly hamper their efforts to terminate the instant litigation. Although the Court is mindful of Plaintiffs' desire to expeditiously proceed with the current litigation, its arguments concerning undue delay do not relate to the New York Brothertown

Indian Nation's failure to intervene at an earlier date.

Rather, Plaintiffs' arguments center around the status of the instant litigation as it moves forward. Given that the current proceeding is still in its relative infancy, notwithstanding the fact that it is twenty six years old, the Court must determine whether it will follow one of two tracks. The first track, proposed by Plaintiffs, would have issues of liability determined on summary judgment before the end of the year with a possible damages trial to follow shortly thereafter.

The second track requires the Court to determine whether each of the current Plaintiffs has standing to assert their claims before proceeding to issues of liability.[8] For example, like the New York Brothertown Indian Nation, current plaintiff Oneida of the Thames is also not a federally recognized tribe. Moreover, New York State argues that all the plaintiffs in the current litigation have not met the "continuous tribal existence" element necessary for them to assert their claims under the Indian Trade and Intercourse Act. *See generally Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 585–88 (1st Cir.1979).

It is therefore likely, if not highly probable, that the Court may nevertheless be required to adjudicate issues regarding tribal standing, continuity of tribal existence, and tribal status regardless of whether the New York Brothertown Indian Nation is allowed to intervene. Since the Court has not already resolved these issues, it does not see how Putative Intervenor's failure to file its motion earlier has prejudiced Plaintiffs. Instead, when issues regarding each individual tribe's standing is raised, the Court will address them and each plaintiff will have to show that it has standing to assert its claims.[9]

---

7. For example, the United States did not intervene in the instant litigation until 1998 and New York State was only added as a party within the last six months.

8. For example, in their pre-conference memorandum submitted to the Court on April 4, 2001, New York State asserts that the New York Brothertown Indian Nation is an indispensable party to the current suit. The State further argues that if the New York Brothertown Indian Nation is

not allowed to intervene, it will file a motion to dismiss for failure to join an indispensable party.

9. Although the Court is somewhat skeptical of Putative Intervenor's claims as to the continuity of its tribal existence or of its ability to show that it has federal recognition based on prior treaties, these allegations, as the Second Circuit has held, are not frivolous on their face. *See Oneida Indian Nation v. New York,* 732 F.2d 261, 263 n. 3 (2d Cir.1984). As a result, the Court will not

The Court also disagrees with Plaintiffs' assertion that if it determines that Putative Intervenor has tribal standing to maintain its claims in the instant litigation that this determination would somehow allow Putative Intervenor to circumvent the tribal recognition requirements contained in 25 C.F.R. §§ 83.1 *et seq.* It is well settled that tribal identity for purposes of asserting a claim under the Indian Trade and Intercourse Act is different from establishing tribal identity with the Bureau of Indian Affairs. *See Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51, 57 (2d Cir.1994). Each contains different standards and each results in separate entitlements even though there is considerable overlap between the two. *See id.*

For example, tribal recognition here would not allow Putative Intervenor to receive federal aid or any entitlements given to tribes that have completed the formal recognition process with the Bureau of Indian Affairs. Rather, if the Court concludes that Putative Intervenor is a tribe for purposes of asserting a claim under the Indian Trade and Intercourse Act, the benefits it could receive are limited to those recovered at the conclusion of litigation. This privilege is the same that plaintiff Oneida of the Thames seeks and the Court sees no reason to allow one tribe their day in court while denying another the same until further factual development regarding their standing occurs.

### 3. *Prejudice to Applicant if the Motion is Denied*

As to the New York Brothertown Indian Nation, it is possible that it may suffer prejudice if its motion is denied. Particularly, the New York Brothertown Indian Nation claims rights to land that are disputed in the instant litigation. If the Court ultimately grants Plaintiffs relief on their underlying land claims without taking into account the possibility that they do not hold legal title to those portions of land that Putative Intervenor claims, it is possible that the Putative Intervenor may find its alleged interest in these lands harmed through the operation of principles of stare decisis. *See Oneida Indian Nation,* 732 F.2d at 265–66; *Hartford Fire*

deny Putative Intervenor's motion on this

*Ins., Co. v. Mitlof,* 193 F.R.D. 154, 162 (S.D.N.Y.2000).

This is true because, as the Court resolves the various matters raised in the current litigation, it will be required to make conclusions of law on issues of first impression, or make mixed findings of fact and law, which implicate the various treaties and land titles at issue. *See Oneida Indian Nation,* 732 F.2d 261. These findings, although not operating in rem upon the land itself and not giving rise to principles of collateral estoppel, may nevertheless control any subsequent lawsuit that Putative Intervenor brings. *See id.* Thus, it is possible for them to suffer prejudice if they are not allowed to intervene in the current litigation to protect their alleged rights.

### 4. *Unusual Circumstances Militating For or Against a Finding of Timeliness*

As already pointed out, this case involves claims to land that extend back more than two hundred years. Furthermore, Plaintiffs themselves waited until approximately two hundred years before challenging Defendants' allegedly unlawful action via the instant suit, the New York Brothertown Indian Nation had to conduct extensive background research in order to support its motion to intervene, and the instant suit has not proceeded substantially beyond the pleading stages in the twenty years since it was filed. These highly unusual circumstances also support the Courts' conclusion that the New York Brothertown Indian Nations' motion for intervention is timely and the Court holds as such.

### C. New York Brothertown Indian Nation's Interest in the Current Litigation

█ In order to intervene as of right, a moving party must possess "an interest relating to the property or transaction which is the subject of the action." Fed R. Civ. P. 24(a)(2); *see also New York News,* 972 F.2d at 486 (2d Cir.1992). Such an interest must also be "direct, substantial, and legally pro-

ground. *See id.*

tectable." *Washington Elec.,* 922 F.2d at 97. Substantive legal rights such as those arising under federal statute are legally protectable and will support a motion for intervention but procedural rights such as those created by the Federal Rules of Civil Procedure are not protectable and will not support a motion for intervention. *See generally New York News,* 972 F.2d at 486.

■ In the current suit, the New York Brothertown Indian Nation asserts an interest relating to portions of real property allegedly located inside the territory that Plaintiffs claim. This is a direct, substantial, and legally protectable interest that usually underpins motions for intervention filed as of right. *See Oneida Indian Nation,* 732 F.2d at 265. Nevertheless, Plaintiffs argue that Putative Intervenor's alleged interest is not protectable in the instant suit.

Central to Plaintiffs' argument is the assertion that the Putative Intervenor's land claim does not involve land that is at stake in the current litigation. Rather, Plaintiffs argue that the New York Brothertown Indian Nation's land claim lies east of the land they claim. In response, the New York Brothertown Indian Nation provides a modicum of evidence indicating that the land that is the subject of their claim lies within the Oneida land claim. At a minimum, Putative Intervenor raises issues that might give rise to the relief it seeks and, as such, this issue, like others relating to each land claims' alleged veracity, is better left until each party has had a chance for additional discovery and the matter is fully briefed before the Court.

Plaintiffs also claim that the New York Brothertown Indian Nation's alleged interest in land is not legally protectable because it depends on a challenge to the Treaty of Fort Schuyler. According to them, because the

new federal entity created by the several states' ratification of the United States Constitution did not become operative until the first Wednesday in March of 1789,[10] New York State, pursuant to the law applicable before ratification of the Constitution, was entitled to enter into the Treaty of Fort Schuyler and validly extinguished any rights to land that the New York Brothertown Indian Nation had under the Treaty of 1774. Thus, Plaintiffs argue that Putative Intervenor cannot rest its claim on any challenge to the validity of the Treaty of Fort Schuyler. *See Oneida Indian Nation v. New York,* 860 F.2d 1145, 1159–60 (2d Cir.1988); *Oneida Indian Nation,* 691 F.2d at 1079 n. 6.

Although the Court agrees with Plaintiffs' statement of the law, Putative Intervenor argues that its land claims do not directly challenge the validity of Fort Schuyler. Rather, it argues that because the Oneidas did not have title to the New York Brothertown Indian Nation's land, nor the power and right to convey that land, New York State never acquired valid title to this. In essence, Putative Intervenor's argument boils down to a distinction without merit.

The Treaty of Fort Schuyler ceded all of the Oneida's land to the State of New York but left them about 300,000 acres to hold in posterity. Additionally, it provided the "the New England Indians" then settled in Brothertown "a tract of two miles in breadth and three miles in length." Whether New York did or did not actually acquire the New York Brothertown Indian Nation's land from the Oneidas via the Treaty of Fort Schuyler because the Oneida's did not have this land to give is a question regarding the manner, method, and time of the extinguishment of their title. *See Oneida Indian Nation,* 691 F.2d at 1096. As such, it is a non-justiciable

10. The United States Constitution was ratified on June 21, 1788 after the ninth state, New Hampshire, acceded to its provisions. New York ratified the Constitution on July 26, 1788. The Treaty of Fort Schuyler was entered into on September 22, 1788, a date following ratification of the Constitution. Nevertheless, the old government, bound by the Articles of Confederation, continued to exist until it passed a resolution calling for the new government, bound by the Constitution, to become operative. This resolution declared that the old government would

dissolve on the first Wednesday in March of 1789. As a result, the Constitution's provisions took effect after the Treaty of Fort Schuyler was signed and its validity is dependent on an analysis of New York's power under the Articles of Confederation. *See Owings v. Speed,* 18 U.S. (5 Wheat.) 420, 422, 5 L.Ed. 124 (1820); *Oneida Indian Nation v. New York,* 691 F.2d 1070, 1079 n. 6 (1982); *Oneida Indian Nation v. New York,* 520 F.Supp. 1278, 1323 (N.D.N.Y.1981) (rev'd on other grounds *Oneida Indian Nation,* 691 F.2d at 1096).

political question. *See United States v. Santa Fe Pac. R.R. Co.,* 314 U.S. 339, 347, 62 S.Ct. 248, 86 L.Ed. 260 (1941).

The Treaty expressly extinguished any rights the New York Brothertown Indian Nation had as to a majority of the 12 × 13 tract of land they claim and left them with only the 2 × 3 tract of land deeded them in the treaty. At the same time that Putative Intervenor does not have a legally protectable right to vast portions of the land it seeks, the Court also recognizes that this holding operates to potentially perpetuate a historic injustice done to Putative Intervenor's ancestors. Nevertheless, whether New York State in 1788 extinguished the New York Brothertown Indian Nation's right to the majority of the 12 × 13 piece of land "by treaty, by the sword, by purchase, by the exercise of complete dominion adverse to the right of occupancy, or otherwise, its justness is not open to inquiry in the courts." *Santa Fe,* 314 U.S. at 347, 62 S.Ct. 248; *Beecher v. Wetherby,* 95 U.S. 517, 525, 24 L.Ed. 440 (1877); *see also Oneida Indian Nation of New York,* 691 F.2d at 1096.

Of course, this holding does not render Putative Intervenor's proposed amended complaint frivolous on its face or otherwise futile. It still seeks relief on the grounds that New York State violated Putative Intervenor's rights regarding the remaining 2 × 3 tract of land deeded them in the Treaty of Fort Schuyler by engaging in a series of unlawful transactions taking place after 1789.[11] Since these claims do not depend on a direct challenge to the Treat of Fort Schuyler and the Court does not have the necessary factual record before it to adjudicate whether this land is located inside the Oneida's territory or to the east of it, Putative Intervenor has at least shown that it has a legally protectable interest in this portion of land for purposes of intervention. Accordingly, the Court declines to deny Putative Intervenor's motion for failing to demonstrate that it has a legally protectable interest in the current litigation.

**D. Impairment of Interest in the Current Action and Adequacy of Existing Parties to Protect Putative Intervenor's Interest in the Action**

■ As already discussed in those sections of this opinion dealing with prejudice to Putative Intervenor if its motion is denied, the operation of stare decisis may impair its interest in portions of the land claimed if not allowed to intervene in the current action. *See Oneida Indian Nation,* 732 F.2d at 261. As to whether the existing parties are adequate to protect Putative Intervenor's rights, the Court notes that "[v]irtual representation should be tested by reference to the pleadings, especially the relief sought." *Id.* at 266. In this case, Putative Intervenor and Plaintiffs are conflicting claimants to the same land. As the second circuit has held, "[t]his alone precludes representation of the intervenor's interest by plaintiffs." *Id.* Consequently, the Court concludes that Putative Intervenor has met the final two elements needed to intervene as of right in the instant litigation.

**III. CONCLUSION**

Accordingly, it is hereby

ORDERED that the New York Brothertown Indian Nation's motion to intervene is GRANTED; and it is further

ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

11. As already discussed, there is conflicting evidence presented by both parties as to whether this land lies within the Oneida's claimed land or sits outside it.