SENECA NATION OF INDIANS,
Plaintiff,

United States of America,
Plaintiff–Intervenor,

v.

State of NEW YORK, George Pataki, as Governor, Joseph Seymour, as Commissioner of General Services; Bernadette Castro, as Commissioner of Parks, Recreation and Historic Preservation; Joseph and Susan Chiapuso; Howard B. Whitney Estate; Walter L. Whitney; Jane E. Schuck; Kent Sandford; Richard J. and Beverly A. McCutcheon; Albert A. and Lucy Hoffman; Myles and Sandra Barraclough; Duane G. Glover; Paul H. and Virginia M. Geer; Deborah H. Baldwin; Robert L. and Eugenia Jones; Stephen M. Kane; Scott E. and Rosemary N. Fisher; William A. Campbell; David J. Gibson; Clarence J. Coffman, Sr.; Clarence J. Coffman, Jr.; C. James Coffman, Sr., and Jean Coffman; Eileen W. Garling; Robert F. and Susan F. Van Der Horst; Howard and Florence Luzier; Eugene and Lousie Hickey; Phillip and Shirley Confer; David C. and Frances E. Williams; Kenneth Campbell; Frederick Tapp; and Susan Bunker, Defendants.

No. 85–CV–411C.

United States District Court,
W.D. New York.

Feb. 7, 2003.

Whiteing & Smith (Jeanne Whiteing, Esq., of Counsel), Boulder, CO, Arlinda F. Locklear, Esq., Jefferson, MD, for Plaintiff.

United States Department of Justice, Environment & Natural Resources Division, Indian Resources Section (Pilar Thomas, Esq., of Counsel), Washington, D.C., for Plaintiff–Intervenor United States.

Eliot Spitzer, Esq., Attorney General of the State of New York (Peter B. Sullivan, Esq., Assistant Attorney General, of Counsel), Buffalo, NY, for State Defendants.

Roscetti & DeCastro, P.C. (James C. Roscetti, Esq., of Counsel), Niagara Falls, NY, Larry B. Leventhal, Esq., Minneapolis, MN, for Proposed Intervenor The Seneca–Cayuga Tribe of Oklahoma.

CURTIN, District Judge.

The Seneca–Cayuga Tribe of Oklahoma has filed a motion pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure to intervene as of right in this action, or in the alternative for joinder as a necessary party pursuant to Rule 19(a) (Item 215). The Seneca Nation of Indians as party plaintiff, the United States of America as plaintiff-intervenor (referred to collectively herein as "plaintiffs"), and the State of New York as defendant oppose intervention or joinder. Oral argument of the motion was heard by the court on January 21, 2003. For the following reasons, the motion is denied.

## BACKGROUND

This action was originally commenced in 1985 by the Seneca Nation of Indians against the State of New York seeking damages, ejectment, and declaratory relief with respect to certain property interests in a portion of

Cuba Lake and adjacent lands lying within the historic bounds of the Seneca Nation's Oil Spring Reservation, located in Cattaraugus and Allegany Counties, New York.[1] When initial settlement negotiations proved unsuccessful, the parties engaged in extensive discovery prior to the filing of cross-motions for partial summary judgment on liability. In 1998, after a stay of the litigation pending the outcome of Supreme Court proceedings dealing with similar issues, the United States was permitted to file a complaint in intervention (Item 125) on behalf of the Seneca Nation, seeking identical relief-*i.e.*, enforcement of the provisions of the federal Nonintercourse Act, 25 U.S.C. § 177.

On October 31, 1998, this court granted summary judgment on liability in favor of plaintiffs, finding that the State violated the Nonintercourse Act when it purported to extinguish Indian title to the Oil Spring Reservation lands in 1858 through its power of eminent domain as part of a project to construct a reservoir which would provide water for the Genesee and Erie Canals. *Seneca Nation of Indians v. State of New York*, 26 F.Supp.2d 555 (W.D.N.Y.1998), *aff'd*, 178 F.3d 95 (2d Cir.1999). Subsequently, the parties filed briefs and expert land valuation reports addressing the fashioning of an appropriate remedy, and have engaged in protracted private mediation in an effort to reach mutually acceptable terms for settlement of the remedy issues.

On November 20, 2002, the Seneca–Cayuga Tribe filed its motion to intervene in the case, or in the alternative to be joined as an indispensable party, seeking to protect its asserted interest in the Oil Spring Reservation lands. The Seneca–Cayuga Tribe contends that it is one of three tribal branches claiming status as a successor-in-interest to the "Historic Seneka Nation" (Item 216, p. 2), a participant in the 1794 Treaty of Canandaigua between the United States and the Six Nation Confederacy which guaranteed title to the lands at issue. The plaintiffs and the State challenge the legitimacy of this asserted interest and oppose intervention or joinder on various grounds, briefed and argued at length and discussed below.

## DISCUSSION

### I.  Motion to Intervene

■  The Seneca–Cayuga Tribe seeks intervention as of right pursuant to Rule 24(a)(2), which provides:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The standards governing intervention as of right under this rule are well established. The applicant must (1) timely file an application, (2) show a legally protectable interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996); *see also Federal Trade Commission v. First Capital Consumer Membership Services, Inc.*, 206 F.R.D. 358, 362 (W.D.N.Y. 2001). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Commissioner*, 847 F.2d 1038, 1043 (2d Cir.1988).

■  Under Rule 24(a)(2), the proposed intervenor's interest in the subject matter of the action must be "direct, substantial, and

---

1.  In 1993, and again in 1994, the Seneca Nation was granted leave to file an amended complaint adding as defendants those private citizens believed to hold leases with the State to cottage lots located within the subject lands. The Attorney General appeared as counsel of record on behalf of those private defendants, as well as the State defendants. On May 16, 2002, this court issued an order granting the Attorney General's motion to withdraw as counsel for the private defendants in light of an actual conflict of interest that arose during the course of mediation, and giving the individual defendants the opportunity to appear in the case on their own behalves or through other counsel (*see* Item 210). The court also denied the motion filed on behalf of the Cuba Lake District to intervene for the purpose of participating in the ongoing mediation (*id.*).

legally protectable ...." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990). At the same time, "[i]ntervention cannot be used as a means to inject collateral issues into an existing action." *Id.*

Plaintiffs and the State challenge the Seneca–Cayuga Tribe's application on each of the Rule 24(a)(2) requirements, now discussed in turn.

## A. Timeliness

█ Whether an application for intervention is timely "is determined within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994) (citing *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973)). As stated by the Second Circuit in *Pitney Bowes:*

> Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*Pitney Bowes*, 25 F.3d at 70.

### 1. Notice of the Interest

The Seneca–Cayuga Tribe contends that it only recently learned of the existence of the claims at issue in this litigation when, in June 2001, Chief LeRoy Howard began his term of service and was advised about the case by a consultant to the Tribe. This contention is belied by the long institutional history of the dispute between the Seneca Nation and the State over the Oil Spring Reservation Lands. As discussed at some length in this court's liability summary judgment decision, the inverse condemnation of the subject lands was challenged in protracted proceedings before the Indian Claims Commission and the United States Court of Claims, commencing as early as 1924 and resulting in final judicial determination of the claim in the State's fa-

vor as set forth in a 1965 published Court of Claims opinion. *Seneca Nation*, 26 F.Supp.2d at 561–62 (citing *Seneca Nation of Indians v. United States*, 173 Ct.Cl. 912, 1965 WL 8344 (1965)). Attorney Paul G. Reilly, Esq., represented the Seneca Nation in that litigation (*see* Item 223, Sullivan Aff., Ex. A). At or around the same time, Mr. Reilly appeared as counsel before the Indian Claims Commission on behalf of the Seneca–Cayuga Tribe (among others) in an administrative challenge seeking additional compensation from the State for the sale of Cayuga lands in central New York State (*id.*, Ex. B). In addition, Mr. Reilly represented both the Seneca Nation and the Seneca–Cayuga Tribe in a joint claim before the Indian Claims Commission seeking recovery of alleged deficiencies in payments by the United States required under various treaties, including the 1794 Treaty of Canandaigua (*id.*, Ex. C).

In 1982, Congress passed a statute of limitations pertaining to Indian land claims, set forth at 28 U.S.C. § 2415. In conjunction with this legislation, the Department of the Interior was required to publish a list of then-known potential claims that might be brought on behalf of any Indian tribe or nation, including claims premised on alleged violations of the Nonintercourse Act. The list was published in the Federal Register on March 31, 1983, identifying a "boundary encroachment" claim by the Seneca Nation pertaining to the Oil Springs Reservation (*id.*, Ex. D).

Furthermore, when this action was commenced in 1985, the Seneca–Cayuga Tribe had already been granted intervention status in the longstanding federal land claim brought by the Cayuga Indian Nation against the State of New York, claiming to be a successor-in-interest to the Cayuga Nation on the same basis as asserted here. In a July 1999 decision in the Cayuga case, United States District Judge Neil P. McCurn relied on and discussed this court's 1998 decision as it pertained to immunity of State officials under the Eleventh Amendment. *See Cayuga Indian Nation of New York v. Cuomo*, 1999 WL 509442, at *11–13 (N.D.N.Y. July 1, 1999) (citing *Seneca Nation*, 26 F.Supp.2d at 564–65). The Seneca–

Cayuga Tribe was (and still is) represented in the *Cayuga* case by Glenn M. Feldman, Esq.

Based on these circumstances, the Seneca–Cayuga Tribe's claim that it did not receive notice of its interest in this action until June 2001 is untenable. Perhaps Chief Howard was not aware of the interest until he took office. Still, no motion was filed until November 2002, almost one year and a half later. Certainly, in light of the well-documented and reported history of tribal land claims in New York State, including the dispute over the Oil Springs Reservation lands, the Seneca–Cayuga Tribe should have known about and asserted its purported interests under a two-hundred-and-ten-year-old treaty in a seventeen-year-old lawsuit long before it did.

### 2.  Prejudice to Existing Parties

In support of its application, the proposed intervenor refers to *Oneida Indian Nation of New York v. State of New York*, 201 F.R.D. 64 (N.D.N.Y.2001), in which United States District Judge Lawrence E. Kahn recently granted a motion made by the alleged successors-in-interest to the Brothertown Indian Nation to intervene in another long-standing central New York land claim case. The case had been pending for some twenty-six years when the motion to intervene was made. The court noted that the existing parties did not suffer any prejudice as a result of the long delay between the institution of the suit and the filing of the motion to intervene because, "although over twenty six years old, [the case] is still in its initial stages, with no discovery having been conducted and until now motion practice had been minimal and of no real import." *Id.* at 68.

By contrast, this case has progressed in litigation through discovery, motion practice, and determination of liability, and all that remains is the shaping of an appropriate remedy. The parties have devoted considerable time and substantial resources to the mediation process directed toward this end. If intervention of a new party-claiming an interest never before considered in the litigation-is allowed at this juncture, the possibility

of settlement will be negatively affected. Significantly, the proposed intervenor's claim that it is a successor-in-interest to the historic Seneca Nation is challenged by all of the existing principal parties, necessitating further discovery, additional motion practice, and reworking of the previously submitted remedy memoranda and land valuation reports.

### 3.  Prejudice to the Applicant

The Seneca–Cayuga Tribe claims that its ability to assert its interests under the Treaty of Canandaigua would be prejudiced if it is not allowed to intervene. As just mentioned, the existing parties have challenged the legitimacy of this asserted interest, and have promised to litigate this very issue should the court grant the intervention application. This would surely derail the mediation process, in addition to causing further expenditure of litigation resources by the parties and the court. Accordingly, any prejudice to the interests of the proposed intervenor must be balanced against the interests of the existing parties and the court in resolving this long-standing dispute.

### 4.  Unusual Circumstances

As with most tribal land claims, adjudication of property rights asserted under treaties and transactions extending back hundreds of years necessarily presents unusual circumstances. *See, e.g., Oneida Indian Nation*, 201 F.R.D. at 69. However, in this court's view, perhaps the most unusual circumstance to be considered is the fact that the Seneca–Cayuga Tribe waited until now to assert an interest under a two-hundred-and-ten-year-old treaty in a one-hundred-and-fifty-year-old eminent domain dispute on the verge of resolution in a seventeen-year-old lawsuit.

■ Based on all of these circumstances, I find the application to intervene untimely.

### B.  Legally Protectable Interest

Intervention as of right also requires that the proposed intervenor demonstrate that it has a legally protectable interest in the action, that the interest may be impaired by

the disposition of the action, and that the interest is not protected adequately by the parties to the action. The Seneca–Cayuga Tribe devotes the bulk of its briefing to the argument that its asserted interest in this action is "direct, substantial, and legally protectable," as required under Rule 24(a)(2). *Washington Elec. Coop.*, 922 F.2d at 97. As mentioned, the existing parties challenge this assertion on several fronts. For example, the Seneca Nation contends that the Seneca–Cayugas were politically separate and independent from the Six Nations long before the Treaty of Canandaigua was signed, as held by the Indian Claims Commission in *Strong v. United States*, 31 Ind. Cl. Comm. 89 (1973), *aff'd*, 207 Ct.Cl. 254, 518 F.2d 556 (1975).[2] The State argues that the Seneca–Cayugas lack standing to assert a claim on behalf of the historic Seneca Nation in this action because they have asserted a similar claim in intervention as a successor-in-interest to the historic Cayuga Nation in the *Cayuga* land claim case pending in the Northern District of New York. The State further argues that since the United States has not asserted a claim on behalf of the Seneca–Cayuga Tribe, questions with respect to the State's Eleventh Amendment immunity from suit would again need to be addressed. *See Seneca Nation*, 178 F.3d at 97 ("[W]e note that the State of New York retains its Eleventh Amendment immunity to the extent that the Seneca Nation of Indians or the Tonawanda Band of Seneca Indians raise claims or issues that are not identical to those made by the United States.") (citing *Arizona v. California*, 460 U.S. 605, 614, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

Of course, the nature and legitimacy of the proposed intervenor's interest in the Cuba Lake lands cannot be determined by way of this motion to intervene. *See Oneida Indian Nation of Wisconsin v. State of New York*, 732 F.2d 261, 265 (2d Cir.1984) (application to intervene cannot be resolved by reference to ultimate merits of claims which intervenor wishes to assert following intervention) (citing *LaRouche v. Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir.1982)); *see also Herman v. New York Metro Area Postal Union*, 1998 WL 214787, at *1 (S.D.N.Y. April 30, 1998) (applicant's well-pleaded allegations must be accepted as true for purposes of considering motion to intervene, with no determination made as to merits of issues in dispute). However, it is clear from this discussion that determination of the question as to whether the Seneca–Cayuga Tribe retains a legitimate, direct, and legally protectable interest in the Cuba Lake lands would require additional, perhaps extensive, litigation collateral to the sole remaining issue of fashioning an appropriate remedy for the State's unlawful acquisition of those lands. As noted, the parties have devoted extensive time and effort to mediation, and it is in the court's best interest to see that those efforts continue unimpeded by the last-minute assertion of uncertain claims for a share of the remedy.

Accordingly, based on the discussion above, I find that the application to intervene is untimely, and the court, at this time, need not become embroiled in a determination of whether the proposed intervenor has a legally protectable interest in the action, whether the interest may be impaired by the disposition of the action, or whether the interest is not protected adequately by the parties to the action-all questions requiring reference to the ultimate merits of the claims which the

---

2. The Indian Claims Commission's opinion in *Strong* details the separation of the Seneca–Cayugas' ancestors (known as the "Mingoes") from the Six Nations in New York and their migration to Ohio in the mid–1700's. The Commission found as follows:

> The Seneca–Cayuga Tribe of Oklahoma constitutes the descendants of these Mingoes who were living in Ohio in the 18th Century.... Based upon the record in these proceedings, we believe that by the time of the 1794 Canandaigua Treaty, the Mingoes in Ohio were small, independent bands, no longer politically subservient to the Six Nations of New York....

> [B]eginning shortly before 1750, the Mingoes themselves were asserting their independence of the Six Nations of New York.... The only conclusion which can be reached from an analysis of the activities of these Mingoes in Ohio during the 18th century is that they constituted independent bands who often acted in concert with other Ohio Indians. Their actions do not support the conclusion that they remained politically affiliated with the Six Nations of New York.

*Strong v. United States*, 31 Ind. Cl. Comm. at 114, 116, 117.

Seneca–Cayuga Tribe wishes to assert following intervention.

## II. Motion for Joinder as Necessary Party

The Seneca–Cayuga Tribe also moves pursuant to Fed.R.Civ.P. 19 for joinder as a necessary and indispensable party to the action. Rule 19 requires the court to conduct a two-part analysis in order to determine whether an absent party is necessary and indispensable. An absent party is necessary and shall be joined in the action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). If the court determines that the absent party is necessary, it must then determine whether the absent party is indispensable according to the test outlined in Rule 19(b), which provides:

> If a person as described in [Rule 19(a)(1)-(2) ] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b); *see Oneida Tribe of Indians of Wisconsin v. AGB Properties, Inc.,* 2002 WL 31005165, at \*2–4 (N.D.N.Y. September 5, 2002). Unless Rule 19(a)'s threshold standard is met, the court need not consider whether the party is indispensable under Rule 19(b). *Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1123 (2d Cir.1990).

Rule 19(a)(1) examines whether, in a party's absence, complete relief can be accorded among those already parties to the suit. The Second Circuit recognizes that the term "complete relief" refers only to relief "as between the persons already parties, and not as between a party and the absent person" seeking joinder. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 209 (2d Cir.1985).

Notwithstanding the failure of the parties to forcefully advance their positions on this aspect of the Seneca–Cayugas' motion, it is clear to the court that the present plaintiffs-the Seneca Nation and the United States-can obtain full and complete relief against the existing defendants. Indeed, plaintiffs have already obtained the full measure of declaratory relief sought in the action, by virtue of the court's ruling as a matter of law that the State violated the Nonintercourse Act when it acquired the disputed Oil Spring lands. The Seneca–Cayuga Tribe played no role in the long, involved process of obtaining this relief, and has made no showing that its presence is now required in order for the court (or the parties, through mediation or trial) to fashion appropriate legal or equitable remedies. Moreover, as held long ago in *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912), in the unique context of enforcing restrictions on the alienation of Indian lands, the United States is best situated to provide complete representation of tribal interests, and no other party is necessary. *Id.* at 444–45, 32 S.Ct. 424.

As to the alternative grounds for joinder set forth in Rule 19(a)(2), the Seneca–Cayuga Tribe has made no showing that the disposition of the action in its absence may as a practical matter impair or impede its ability to protect its interest in the subject lands (such as it is), or may leave any of the present parties subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations by reason of the claimed interest.

■ Accordingly, because the court believes that the present plaintiffs can obtain full and complete relief against the existing parties, and considering the extreme prejudice which the addition of a new party would cause to those parties who have expended substantial resources in bringing this highly contested and longstanding litigation to its final stages, I find that the Seneca–Cayuga Tribe has failed to establish necessary party status under the threshold requirements of Rule 19(a). The motion for joinder must be denied.

### CONCLUSION

For the foregoing reasons, the motion of the Seneca–Cayuga Tribe of Oklahoma (Item 215) for intervention or joinder is denied.

So ordered.